JjPLOTKIN, Judge.
Defendant Danny McCadney was charged by bill of information on November 5, 1997, with possession of stolen things valued at five hundred dollars ($500.00) or more, a violation of La. R.S. 14:69. Defendant pled not guilty at his arraignment on November 7, 1997. The trial court denied defendant’s motion to suppress the evidence and found probable cause after a hearing on November 26, 1997. On January 6, 1998, a six-person jury found defendant guilty as charged; and following a hearing on January 18, 1998, the trial court adjudicated defendant a fourth-felony habitual offender. The trial court denied defendant’s motion for a new trial on May 1, 1998; and defendant subsequently waived all delays and was sentenced to forty years at hard labor without benefit of probation or suspension of sentence. The trial court denied defendant’s motion to reconsider sentence but granted defendant’s written motion for appeal.

STATEMENT OF FACTS:

New Orleans Police Officer Ronald Edwards testified that, on the night of September 29, 1997, he responded to a call relating to a possible stolen vehicle in the 1200 block of Alabo Street. Upon his arrival at the scene, he observed a van bwith its engine running and without a license plate. The van’s steering column had been damaged. Defendant was asleep on the rear seat. Another officer woke defendant, who left the vehicle peacefully. Officer Edwards stated that defendant appeared drowsy, and he assumed that defendant had been asleep for some time. It was determined that the van was stolen, and defendant was arrested for possession of stolen property. The owner of the van later came to the scene to recover it.
On cross-examination, Officer Edwards stated that the damaged condition of the *581 steering column would have allowed someone to start the vehicle with a screwdriver, a knife or any pointed object; but he conceded that he did not find any such object in defendant’s possession. On redirect examination, Officer Edwards testified that defendant did not have any keys to the van on his person.
Cherie Menesses, a resident of Violet, Louisiana, testified that she owned a 1991 Chevrolet Astro Minivan, which she purchased new in May of 1991 for $16,000. Mrs. Menesses identified the vehicle’s registration, which was in the names of her and her husband. On September 26,1997, she parked the van at her place of employment on Bullard Road in New Orleans and locked it. It was stolen at approximately 8:45 a.m. that day and was recovered by her husband during the early morning hours of September 29, 1997. She further testified that the driver’s side window and steering column had been broken, in addition to other damage — all of which totaled $7,000. She stated that she did not know defendant and had not given him permission to use her van.

ERRORS PATENT:

A review of the record reveals no errors patent.
| zFIRST ASSIGNMENT OF ERROR:
In his first assignment of error, defendant claims the evidence produced by the State was insufficient to sustain his conviction.
In State v. Ash, 97-2061, pp. 4-5 (La. App. 4 Cir. 2/10/99), 729 So.2d 664, 667-68, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15, this court summarized the standard of review that applies when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir. 1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational jur.or could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Defendant was convicted of the illegal possession of stolen things, which is defined in La. R.S. 14:69 A in pertinent part as:.
the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the *582 thing was the subject of one of these offenses.
|4In other words, in order to sustain a conviction under La. R.S. 14:69, the State must prove that (1) the thing was stolen; (2) the thing was worth more than five hundred dollars; (3) the defendant knew or should have known that the thing was stolen; and (4) the defendant intentionally possessed, received, procured or concealed the thing. State v. Hoskin, 605 So.2d 650, 653 (La.App. 4 Cir.1992). Defendant specifically alleges that the State failed to prove the third and fourth elements beyond a reasonable doubt.
Defendant first argues that the State failed to prove that he knew or should have known that the vehicle was stolen. In State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973, the Louisiana Supreme Court commented on the knowledge element of the crime of possessing stolen things, stating:
In Louisiana, the “mere possession of stolen property does not create a presumption that the person in possession of the property received it with knowledge that it was stolen by someone else.” State v. Ennis, 414 So.2d 661, 662 (La.1982); State v. Nguyen, 367 So.2d 342, 344 (La.1979); State v. Walker, 350 So.2d 176, 178 (La.1977). The state must therefore prove the defendant’s guilty knowledge as it must every other essential element of the offense. Ennis, 414 So.2d at 662. Nevertheless, jurors may infer the defendant’s guilty knowledge from the circumstances of the offense. See Barnes v. United States, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973) (“For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods.”).
97-1001 at pp. 2-3, 707 So.2d at 974.
Officer Edwards testified that defendant appeared to be sleeping on the back seat of the van when he and another officer arrived. The van’s engine was running. The officer said the only reason he suspected that the vehicle had been stolen was that the steering column had been broken open so that the vehicle could be started without a key. He also observed that the vehicle had no license plate, but he did not say that oddity factored into his suspicion that the vehicle was stolen. He said defendant appeared “kind of sleepy,” further stating, “I guess he had been sleeping |sawhile or if — if he was tired or whatever.” He admitted that, when he first saw defendant, he thought defendant was either dead or intoxicated. The officer said that there were four possible means of entry into the van but that he could not tell by which door defendant had entered. Defendant offered no resistance, nor did he attempt to flee, nor did he make any statements to the police. He had no burglary tools on his person, nor was there any evidence that any were found inside the van.
However, Mrs. Menesses, the owner of the van, testified that when she saw it after its recovery, the driver’s side window had been broken, along with the steering column, and a console running almost the entire length of the van had been ripped out so that insulation hung from the ceiling. She also found other damage, and the total damage amounted to $7,000. The condition of the van could accordingly support a reasonable inference that a person inside of it would know or have good reason to believe that it had been stolen. Even assuming, as defense counsel argued at trial, that defendant entered the vehicle at night and fell quickly asleep, a rational trier of fact, viewing all of the evidence in the light most favorable to the State, could find beyond a reasonable doubt that defendant knew or had good reason to believe that the van was stolen.
Defendant also argues that the State failed to prove beyond a reasonable doubt that he possessed the van within the meaning of the statute. However, in order to support a conviction for possession of *583 stolen things, the State need not prove actual possession but may prove constructive possession, which exists when the item is within the defendant’s dominion or- conr trol. State v. Howkins, 516 So.2d 188, 190 (La.App. 4 Cir.1987) (citing State v. Mercadel, 503 So.2d 608 (La.App. 4 Cir.1987)). Possession of stolen things is a general intent crime. State v. Powell, 98-0278, p. 11 (La.App. 4 Cir. 11/17/99), 746 So.2d 825, 831. General intent is present when specific intent is present, and also when the 1 ^circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).
As defendant correctly argues, the evidence presented at trial could be interpreted to so as to raise other possibilities besides those that defendant stole the van himself and remained in control of it until he was discovered or that he received the van from the actual thief or an intermediary and then remained in control of it until he was discovered. It was possible, for example, that defendant actually stumbled upon the unlocked, running van and believed it would be a good place to sleep. It was also possible that the actual thief offered defendant a ride, that defendant fell asleep on the back seat, that the actual thief left the van running while he went to run an errand, and that the actual thief was thus absent when the police discovered defendant in the van.[1]
However, while alternative scenarios tending to exonerate defendant could be imagined from the evidence presented, a rational juror, relying on common sense and experience, would have found such scenarios to be extremely unlikely — that is, unreasonable. Moreover, with regard to this argument by defendant, the fact of the matter is that he was actually in the van and thus could not only use its accoutrements but could also, after waking, ex-elude others from possession of it. Thus, defendant’s arguments on this point seem more relevant to his first contention that he lacked good reason to believe that the van was-stolen.
Somewhat surprisingly, this court has previously been confronted with a situation quite similar to that presented here. In State v. Sanders, 622 So.2d 817 (La.App. 4 Cir.1993), the defendant was found asleep in the drivér’s seat of a |7parked, stolen car. The motor was running, the steering column had been defeated, the trunk lock had been broken, a door lock had been broken, and a screwdriver was found between the front seats. This court affirmed the defendant’s conviction under La. R.S. 14:69, despite his contentions that he had been given a ride by an unknown acquaintance, who had then disappeared, and that he had then helpfully pulled the car over and fallen asleep. The instant case appears distinguishable only in that defendant was found in the van’s rear seat and that no screwdriver or similar tool was present.
Also in Sanders, this court cited State v. Wilson, 544 So.2d 1300 (La.App. 4 Cir. 1989), which weighs even more heavily against defendant’s claims. In Wilson, the defendant was convicted under La. R.S. 14:69 after he was found to be a willing passenger in a stolen car, the steering column of which had been defeated. At trial, the driver of the car, who was also convicted under La. R.S. 14:69, testified that he had offered Wilson a ride that morning; that Wilson could not see that the steering column was broken from the passenger seat; and that Wilson did not know the car was stolen. The jury discounted the driver’s testimony and convicted Wilson; and this court affirmed, holding that the condition of the steering column and the passenger-side door lock were sufficient to prove that Wilson had good reason to believe that the car was *584 stolen. Additionally, and perhaps more importantly with regard to the instant case, Wilson appears to establish that willing occupation of a suspicious vehicle, even as a passenger, may support a conviction La. R.S. 14:69, provided of course that the vehicle is actually stolen and worth more than $500.00.
Here, although defendant was not a passenger at the time of his arrest, he was nonetheless an occupant capable of exercising control over it. The condition jsof the van alerted him that its past was dubious;[2] and the fact that the engine was running was fairly strong circumstantial evidence that defendant did not just stumble upon it. Viewing the totality of the evidence in the light most favorable to the State, we hold that a rational jury could have found each of the four elements of La. R.S. 14:69 proven beyond a reasonable doubt.
This assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR:

Defendant next claims that his sentence is unconstitutionally excessive.
A sentence is excessive, even when within the relevant statutory range, if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Telsee, 425 So.2d 1251 (La.1983). Generally, a reviewing court must determine whether the trial judge adequately complied with the guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should only be imposed on the most egregious offenders. State v. Guajardo, 428 So.2d 468 (La.1983).
Defendant was sentenced as a fourth-felony habitual offender to forty (40) years at hard labor without benefit of probation or suspension of sentence.[3] The |3Habitual Offender Law provides that a fourth-felony offender in defendant’s circumstances be sentenced to a specified term of not less than twenty (20) years at hard labor nor more than his natural life. The trial court denied defendant’s motion to reconsider the sentence.
In his excessive sentence argument, defendant points to the circumstances of his conviction: sleeping in a stolen van.[4] He notes that the maximum sentence of imprisonment he could have received for the offense of possession of stolen things valued at $500.00 or more would have been ten years, and he stresses that he had no prior convictions for violent offenses. Defendant further points out that the longest sentence he had previously received was four years at hard labor.
The trial court set forth over four pages of reasons for sentencing, citing the twenty-seven year old defendant’s lengthy criminal record, beginning with his first felony conviction in 1987 and including five more felony convictions in a ten-year period.[5] The court noted that defendant had *585 received minimum sentences for all these crimes. The trial court recognized that defendant had committed no violent crimes, but it noted that a prior burglary of an inhabited dwelling had the potential to become violent. The court further noted that defendant had been an “A” student until he started using drugs at the age of seventeen years; that he had an eleven-year old son whom defendant’s mother had cared for since the child was six months old; and that his mother felt that drugs were the main cause of defendant’s problems, with the court noting that defendant’s mother believed that defendant’s son loved him even though he had neglected him. The trial court felt that, in light of the many instances of leniency defendant had received from the criminal justice 1 msystem, his actions had proved that he was unwilling to follow the rules by which the majority of the population abided. The trial court also noted the financial impact of approximately $900.00 on the victim; the presentence investigation report reflects that the victim was “adamantly opposed” to leniency in sentencing. of
While defendant’s sentence of forty years at hard labor is severe, it might be seen as only a fair fraction of the maximum term of life imprisonment. The trial court adequately complied with La.C.Cr.P. art. 894.1, having considered mitigating as well as aggravating circumstances. The court sentenced defendant because it believed defendant was incorrigible and would continue to prey on society when he was not imprisoned, as evidenced by more than a decade of criminal activity. The trial court may well have believed that, again in light of the many light sentences defendant has received, only a significant sentence could convince defendant that there are grave consequences for his failure to abandon a criminal mindset. Under these circumstances, we cannot say that defendant’s sentence is constitutionally excessive.
This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR:

In his final assignment of error, defendant claims that the trial court erred in conducting the habitual offender hearing on the same day as the State filed the habitual offender bill of information.
The transcript of the habitual offender hearing reflects that the State filed the bill of information on the same day as the hearing. La. R.S. 15:529.1(D)(l)(a) provides that, if a defendant denies the allegations of the habitual offender bill of information, he shall be given fifteen days within which to file particular objections to the bill. However, the record does reflect any objection by defense |n counsel as to any procedural irregularity in holding the hearing on the same day as the filing of the bill of information.
In State v. Brooks, 98-0693, p. 9 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 819, writ denied, 1999-2519 (La.2/25/00), 755 So.2d 247, this court stated:
A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A); State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). Not only does an objection have to be made, but La.C.Cr.P. art. 841(A) “requires a defendant to make known the grounds for his objection; and he is limited on appeal to those ground[s] articulated at trial ....” State v. Buffington, 97-2423, p. 9 (La.App. 4 Cir. 2/17/99), 731 So.2d 340, 346, quoting State v. Chisolm, 95-2028, p. 6 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195.
98-0693 at p. 9, 758 So.2d 814, 819.
Defendant claims that the failure to comply strictly with the “mandates” of La. 15:529.1 is an error patent, citing State v. Johnson, 432 So.2d 815 (La.1983); State v. Pierce, 585 So.2d 626 (La.App. 2 Cir.1991); and State v. Easton, 463 *586 So.2d 783 (La.App. 2 Cir.1985). None of these cases, however, stand for the proposition that a trial court’s failure to give a defendant fifteen days in which to file an objection to the habitual offender bill of information is an error patent. Johnson concerned a trial court’s failure to advise the defendant of his right to remain silent, thus undermining his acknowledgment or confession of a prior conviction. See 432 So.2d at 817. In Pierce, the trial court failed to advise the defendant of his right to remain silent and also required him to acknowledge or refute his alleged status as a habitual offender before it informed him of his right to a hearing. See 585 So.2d at 629. In Easton, the trial court failed to inform the defendant of his right to be tried as to the truth of the allegations or require him to say whether the allegations were true. See 463 So.2d at 784. Defendant cites no ^authority that any Louisiana court recognizes as an error patent a trial court’s failure to give a defendant fifteen days in which to file an objection to the habitual offender bill of information. Moreover, even assuming this is an error patent — being discoverable by the mere inspection of the pleadings and proceedings, La.C.Cr.P. art. 920(2) — defendant cites no prejudice as a result of any such error, failing to suggest any defects • relating to any of his prior convictions. Therefore, defendant would not be entitled to any relief based on such error. See La.C.Cr.P. art. 921.
Because there is also no merit to this assignment of error, and because there are no errors patent, we affirm defendant’s conviction and sentence.

AFFIRMED.

. Even if this scenario had occurred, the case against defendant would be no weaker, as discussed in our analysis of State v. Wilson, below.

. Defendant did not present a defense of intoxication under La. R.S. 14:15.

. Defendant was not, however, sentenced without benefit of parole.

. Sleeping in a stolen van is, however, the most innocuous interpretation of defendant’s actions. That is, defendant may have been more directly involved in the van’s disappearance.

.Defendant’s convictions include: (1) possession of stolen property in 1987; (2) possession of stolen property in 1989; (3) possession with intent to distribute cocaine in 1989; (4) felony theft in 1992; (5) burglary of an inhabited dwelling in 1995; and (6) possession of stolen property in 1997.