HANS J. LILJEBERG, Judge.
| PThe juvenile court adjudicated juvenile, T.W.,[1] delinquent for a violation of La. R.S. 14:69, illegal possession of stolen property valued at over $500, and committed T.W. to the Office of Juvenile Justice for two years. T.W. now appeals this adjudication and sentence. For the following reasons, we affirm the adjudication and sentence imposed by the juvenile court.

FACTS AND PROCEDURAL HISTORY

On December 5, 2014, the State filed a petition alleging T.W. violated La. R.S. 14:69 by receiving and/or possessing a stolen vehicle valued at over $500. T.W. entered a denial and filed a motion in limine to exclude guns found in the vehicle from evidence. T.W. also filed a motion to suppress statements he made laprior to and after he was advised of his Miranda[2] rights. On February 3, 2015, the juvenile court granted T.W.’s motion in limine and held the hearing on the motion to suppress statements in conjunction with the adjudication hearing.
Deputy Jeffrey Easterby of the Jefferson Parish Sheriffs Office testified that on November 14, 2014, he was dispatched after receiving a report of a stolen vehicle. He located a 1999 white Dodge truck and, after verifying its license plate, Deputy Easterby and other responding officers activated the overhead lights and sirens on their marked police vehicles. The driver of the stolen vehicle refused to stop and sped off at a high rate of speed.
Deputy Easterby testified the stolen vehicle was occupied by the driver, a front seat passenger and a rear seat passenger sitting in the middle of the back seat. The driver of the vehicle disregarded traffic signs, continued onto the Westbank Expressway and crossed the Crescent City Connection Bridge into New Orleans. Deputy Easterby observed the passengers in the front and rear seat turning their heads and looking back at him.
Deputy Easterby chased the vehicle into the parking lot of the New Orleans Police Department (“NOPD”) traffic division headquarters. The vehicle came to an *508 abrupt stop and the passenger door opened. Two black males wearing dark clothing exited the vehicle and began running. The vehicle began moving again and eventually crashed into parking barriers in front of the Wal-Mart on Tchoupitoulas Street. When Deputy Easterby reached the. vehicle, the door on the driver’s side was open and the engine was running. The deputy was unable to turn off the engine because there was no key in the ignition and the ignition lock had been removed from -the steering column. The battery had to be disconnected in 14order to turn off the engine. Deputy Easterby als'o observed a screwdriver on the floorboard of the vehicle.
Deputy Chris Buffa of the Jefferson Parish Sheriffs Office was also involved in the chase of the stolen vehicle. He arrived at the NOPD traffic division headquarters and saw officers had detained one suspect. Deputy Buffa then observed a black male, who he identified as T.W. during the adjudication hearing, walking down the street towards him. T.W. was wearing a dark-colored, shortsleeved shirt, without a jacket. Deputy Buffa found this unusual because the temperature was around thirty degrees that night.
Deputy Buffa observed two NOPD officers approach T.W. The officers asked T.W. where he was going and where he had been. T.W. stated he was coming from a Mend’s house, but he could not remember where the friend lived. The officers also asked T.W. why he did not have a jacket and he claimed he left without it. The, officers then asked T.W. if he knew what was “going on” and T.W. responded he was in the vehicle, but he was not the driver. Deputy Buffa testified that after T.W. made this statement, he was advised of his Miranda rights and placed under arrest.
After being advised .of his rights, T.W. continued to attempt to talk to officers without being questioned. ■ Both NOPD Officer Norbert Henry and Officer Buffa testified that T.W. continued to plead his case with'' officers that' though he was in the car, he was not the driver. Deputy Buffa also heard T.W. state that he threw his jacket behind the Wal-Mart sign after he fled from the vehicle. Deputy Buffa later recovered a “dark black hoodie sweatshirt” from behind the sign.
Jeremy Pugh, the owner of the stolen vehicle, testified that at the time the vehicle was stolen it was valued at between $4,000 and $5,000 because it was in [ ¡¡“perfect condition.” He further testified that prior to the theft of his vehicle, the ignition lock was not missing and the rear passenger window was not broken.
After hearing testimony and arguments, the juvenile court judge denied T.W.’s motion to suppress statements and adjudicated T.W. delinquent. The judge requested a predisposition investigation from the Office of Juvenile Justice (“OJJ”) and set the matter for a disposition hearing on March 4, 2015. Officer Stan Scofield, an OJJ probation officer, prepared the predisposition investigation report. In the report and at the disposition hearing, he recommended that the court commit T.W. to OJJ for secure placement.’ Officer Scofield based his recommendation oii the seriousness of the present charge and T.W.’s pri- or offenses. According to the report, T.W. was previously adjudicated delinquent in Orleans Parish for violations of La. R.S. 14:64.2, carjacking, La. R.S. 14:69(B), illegal possession of stolen things between $500 and $1500, and La. R.S. 14:65, simple robbery. On or about March 27, 2014, the Orleans Parish juvenile court sentenced T.W. to a total of two years suspended and two years of probation for these violations.
*509 Officer Scofield also testified that he supervised T.W. while he was on probation in Orleans Parish. He referred T.W. to the American Tracking Program, which monitored T.W.’s school attendance and curfew. He also referred T.W. to the Youth Empowerment mentoring program. He testified that T.W. participated in the programs until he ran away from home. The predisposition investigation report also indicated that T.W. violated his probation by displaying disruptive behaviors in school and committing the new charge at issue in the present matter.
After hearing testimony and arguments, the juvenile court judge committed T.W. to the custody of OJJ for two years. The judge recommended secure placement because T.W. had the opportunity for probation in Orleans Parish, but continued to place himself and others at risk due to his delinquent behavior. T.W. | (filed a motion for appeal on March 18, 2015, which was granted on March 19, 2015.

LAW AND DISCUSSION

In his first assignment of error, T.W. argues the evidence was insufficient to establish the elements of the offense beyond a reasonable doubt. T.W. argues he was only a passenger in the vehicle and his mere presence was insufficient to establish he possessed the vehicle or knew it was stolen.
In order for the juvenile court to adjudicate a child delinquent, the State must prove the child committed the delinquent act alleged in the petition beyond a reasonable doubt. La. Ch.C. art. 883. In reviewing the sufficiency of evidence, appellate courts must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt as required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In re D.W., 13-114 (La.App. 5 Cir. 9/18/13), 125 So.3d 1180, 1186, writ denied, 13-2478 (La.4/4/14), 135 So.3d 639.
Where the evidence is circumstantial, La. R.S. 15:438 requires that the evidence must exclude every reasonable hypothesis of innocence. State v. Camp, 446 So.2d 1207, 1209 (La.1984). This circumstantial evidence rule provides an eviden-tiary guide and does not establish a separate test nor a stricter standard than the more general rational juror’s reasonable doubt formula. State v. Kestle, 07-1573 (La.12/2/08), 996 So.2d 275, 278.
In juvenile proceedings, the scope of review on appeal extends to both law and facts. See La. Const. art. V, Section 10(B); State in the Interest of D.S., 11-416 (La.App. 5 Cir. 12/28/11), 83 So.3d 1131, 1136. Because the juvenile court judge observes the conduct and demeanor of the witnesses, the appellate court 17should afford great deference to the judge’s findings of fact. Id. Appellate courts may not reverse factual findings of the juvenile court unless manifestly erroneous or clearly wrong. Id.
La. R.S. 14:69(A) provides:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything,of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to, believe that the thing, was the subject of one of these offenses. .
-In order to' convict a defendant of illegal possession of stolen things, the State must - prove beyond a reasonable doubt that 1) the property was stolen, and 2)''the property was of valued 3) the defendant knew or should have known the prop *510 erty was stolen, and 4) the defendant intentionally possessed, procured, received, or concealed the property. State in the Interest of B.J., 617 So.2d 238, 241. (La.App. 5 Cir.1993); State v. Wilson, 544 So.2d 1300, 1301-02 (La.App. 4 Cir.1989). The State need not prove actual possession of the stolen thing, but may prove constructive possession which exists when the item is within the defendant’s dominion or control. State v. McCadney, 98-3026 (La.App. 4 Cir. 4/19/00), 761 So.2d 579, 580, writ denied, 99-1878 (La.3/16/01), 787 So.2d 308.
In McCadney, supra, the defendant also was convicted of possession of stolen property. Officers discovered the defendant sleeping in the rear seat of a stolen vehicle with the engine running. The vehicle had a damaged steering column and a broken window. The appellate court found the defendant was an occupant capable of exercising control over the vehicle and further found the condition of the vehicle alerted the defendant to “its past was dubious.” Id. at 584. Based on the foregoing, the court affirmed the conviction and determined a rational trier of fact could have found the state proved the elements of the crime beyond a reasonable doubt. Id.
| sIn Wilson, supra, the defendant was convicted by' a jury of attempted possession of a stolen motor vehicle valued at over $500. On appeal, the court considered whether the fact that the defendant was the passenger in a car with a broken steering column and door lock, as well as a screwdriver ■ on the floorboard, was sufficient to demonstrate the defendant knew or should have known the car was stolen. The man driving the car pleaded guilty and testified at trial that the defendant was only a passenger and did not know the car was stolen. Despite this testimony, the appellate court determined the evidence was sufficient for the jury to conclude the defendant knew or should have known the vehicle was stolen, and as a willing passenger performed a sufficient act to justify an attempt at possession. Id. at 1302.
In the present case, the vehicle’s ignition lock was missing from the steering column, the rear driver-side window was broken, and a screwdriver was on the floorboard. T.W. admitted to officers he was in the vehicle, but was not the driver. Deputy Easterby testified that from the rear seat, T.W. could see the broken ignition and screwdriver on the floor. Once the vehicle came to a stop, T.W. fled from the pursuing officers and attempted to conceal his identity by removing and disposing of his jacket. Based on the foregoing, we find the evidence was sufficient for the juvenile court judge to determine T.W. knew or should have known the vehicle was stolen and had constructive possession of the vehicle.
Accordingly, this assignment of error lacks merit.
In his second assignment of error, T.W. argues the trial judge erred in 'denying his motion to suppress the statement he made without the benefit of Miranda warnings' because he was in police custody at the time he made the statement. He also contends the trial court erred in failing to suppress subsequent statements because they were the product of the original tainted interrogation.
|9In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless- it demonstrates the use of procedural safeguards effective to secure the privilege against *511 self-incrimination. See also State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 750, n. 2. The constitutional privilege against self-incrimination apply equally to juveniles and adults. State v. Terrick, 03-515 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1159, writ denied, 03-3272 (La.3/26/04), 871 So.2d 346. The obligation to provide Miranda warnings attaches when a person is questioned by law enforcement after he has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612; State v. Payne, 01-3196 (La.12/4/02), 833 So.2d 927, 934. As such, Miranda warnings are applicable only when it is established the defendant has been subject to a “custodial interrogation.” Hunt, 25 So.3d at 754.
Whether a suspect is “in custody” is an objective inquiry. State ex rel. J.D., 14-551 (La.App. 4 Cir. 12/3/14), 154 So.3d 726, 732. Custody is decided by two distinct inquiries 1) an objective assessment of the circumstances surrounding the interrogation to determine whether a formal arrest or restraint on freedom of the degree associated with formal arrest exists, and 2) an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, 1074.
In J.D.B. v. North Carolina, — U.S. -, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), the United States Supreme Court addressed custody determinations for purposes of requiring Miranda warnings in juvenile cases. In that case, the Court hnheld that a child suspect’s age, when known to the interrogating officer or objectively apparent to a reasonable officer, is relevant to the determination whether, considering all the objective circumstances of an interrogation, a reasonable person in the suspect’s position would understand his freedom to terminate police questioning and leave. Id. at 2406; State ex rel. J.D., 154 So.3d at 732.
In the present case, officers observed the suspects fleeing from the stolen car and described them as black males wearing dark-colored clothing. The officers later observed T.W. walking towards them and wearing a dark-colored, short-sleeved shirt in thirty-degree weather. The officers approached T.W. and asked him where he was going and where he had been.[3] T.W. told officers he was at a friend’s house, but could not recall where the friend lived. Officers then asked T.W. if he knew what was going on and he admitted he was a passenger in the vehicle.
T.W. argues he was under police custody during this questioning by the officers. However, we find at the time T.W. made his initial statement, there was no restraint on his freedom associated with a formal arrest. T.W. was approached on a public sidewalk and the officers posed simple questions regarding his whereabouts and his lack of a jacket considering the cold weather. Furthermore, the record does not contain any evidence indicating the officers were aware of T.W.’s age when they first approached him for questioning. Accordingly, it appears that such conduct, without more, did not amount to a custodial interrogation. See United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 510 (1980) (where the U.S. Supreme Court found the In defendant was not seized and voluntarily consented to accompany the officers when *512 agents approached her in a public airport concourse, posed a" few questions and asked her to accompany them to an interview room).
T.W. also contends the trial court erred by failing to suppress statements he made to officers after he was advised of his Miranda rights. Before ■ introducing a defendant’s statement into evidence, the State must show that the statement did not result from fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; State ex rel. A.B., 07-907 (La.App. 5 Cir. 3/25/08), 983 So.2d 934, 939. The determination of whether a waiver of constitutional rights is made knowingly and voluntarily is made on a case-by-case basis and such a determination rests upon the “totality of the circumstances.” Id.
In addition to age, some factors that have .been considered in assessing the totality of the circumstances include the accused’s experience, education, background, intelligence, and capacity to understand the warning given at the time of the waiver. Terrick, 857 So.2d at 1159. The admissibility of a statement or confession is a question for the trial court, and its conclusions on the credibility and weight of testimony relating to. voluntariness of a statement will not be overturned on appeal unless not supported by the evidence. Id. at 1159-60. Furthermore, spontaneous and voluntary statements not given as a result of interrogation are admissible even without Miranda warnings. State ex. rel. S.L., 11-883 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 836.
Although T.W. was in custody when he made the subsequent statements, the evidence indicates these statements were not in response to police interrogation. The record does not contain evidence indicating that T.W. made these statements under duress, intimidation, threats or promises by police. Furthermore, at the time of his arrest, T.W. was on probation for carjacking and illegal possession of stolen | ¶ 2things and therefore, had prior experience with the criminal justice system. Considering the foregoing, we find the trial court did not err by admitting T.W.’s statements into evidence. This assignment of error is also without merit.
In his third assignment of error, T.W. contends his two year disposition is excessive and was imposed after the trial court reviewed an incomplete predisposition investigation report.
The Louisiana Constitution of 1974, Art. I, Sec. 20 prohibits “cruel, excessive,, or unusual punishment.” State ex rel. T.S., 04-1111 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 79. In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot be adequately safeguarded without' such removal. La. Ch.C. art. 901(A); Id. at 80. In considering the alleged excessive nature of a disposition, we must review the record, to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child’s needs, and the best interest of society. La. Ch.C. art. 901(B); Id. at 79. Because of the special nature of the proceedings, a juvenile court has much discretion when imposing a disposition. Id. at 79-80.
T.W. first contends his disposition hearing was inadequate because the predisposition investigation report requested by the juvenile court did not provide all the information required by La. Ch.C. art. 890(A). T.W. appears to complain about the level of detail in the report. He further argues the report does not reflect any effort by the probation officer to evaluate T.W.’s behavior while in detention awaiting these *513 proceedings. After reviewing the record, we find T.W.’s counsel did not object to the adequacy of the report at the disposition hearing, nor he did he question Officer Scofield regarding any alleged deficiencies in the report during cross-examination. T.W. could have also introduced evidence to explain any |13sudden change in behavior or educational difficulties. T.W. did not offer any witnesses or evidence at the disposition hearing.
A new basis for an objection may not be urged for the first time on appeal. State v. Pham, 12-685 (La.App. 5 Cir. 5/16/13), 119 So.3d 202, 219. Therefore, we will not consider T.W.’s arguments regarding alleged deficiencies in the predisposition investigation report.
La. R.S. 14:69 provides that an offender violating this provision shall be imprisoned with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both. We find the juvenile court’s two year commitment in secure placement was not constitutionally excessive. At the time of this incident, T.W. was in violation of his probation for prior adjudications for carjacking and possession of stolen things. During probation, T.W. was offered rehabilitative services with which he failed to comply. We find that the juvenile court judge imposed the least restrictive disposition consistent with the circumstances of this case, T.W.’s needs and the best interest of society.
Considering the foregoing, we find this assignment of error lacks merit.

ERROR PATENT REVIEW

We have reviewed the record for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Although the Louisiana Children’s Code does not address the scope of appellate review, we believe La. Ch.C. art. 104 and La. C.Cr.P. art. 920 mandate error patent reviews in juvenile criminal proceedings. See State ex rel. B.D., 13-760 (La.App. 5 Cir. 4/23/14), 140 So.3d 308, 313, writ denied, 14-1093 (La.1/9/15), 157 So.3d 597. Our review reveals two errors patent which require corrective action.
114The record reflects the juvenile judge failed to adequately advise T.W. of the time limit for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8. If a trial court fails to advise the defendant, then the appellate court may correct this error by informing the defendant of the applicable prescriptive period for postcon-viction relief. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030. Thus, by way of this opinion, we notify defendant that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of adjudication and sentence have become final under the provisions of La.C.Cr.P. arts. 914 or 922.
In addition, the record reveals a conflict between the delinquency disposition judgment[4] and the transcript regarding the sentence imposed by the juvenile court. The delinquency disposition judgment states in Section 2, “Custody”:
IT IS ORDERED that the child be committed to the custody of the Office of Juvenile Justice, whose address is PO BOX 94304, Baton Rouge, Louisiana 70804-9304, to be kept within the juris *514 diction of this court pending further orders not to exceed six months for a period not to exceed two years.
Later in Section 7, “Further Orders”, the delinquency disposition judgment states:
IT IS ORDERED that the maximum duration of the disposition shall be two years, and that the child be given credit for time served.
The transcript from the March 4, 2014 disposition hearing indicates the juvenile court sentenced T.W. “to the Office of Juvenile Justice for a period of two (2) years.”
_|^Section 2 of the delinquency disposition judgment appears to contain a typographical error where it refers to a sentence not to exceed, six months. Where a conflict exists, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter to the trial court with instructions to amend Section 2 of the delinquency disposition judgment to reflect the sentence of 2 years pronounced in the transcript.

DECREE

For the foregoing reasons, we affirm defendant’s adjudication and disposition. We remand the matter for correction of the delinquency disposition judgment consistent with this opinion.

ADJUDICATION AND DISPOSITION AFFIRMED; REMANDED FOR CORRECTION OF DELINQUENCY DISPOSITION JUDGMENT

. In order to maintain the confidentiality of these proceedings required by La. Ch.C. art. 412, we will use initials to identify the juvenile appellant.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. If police officers have reasonable suspicion of criminal activity, they are authorized to stop and question the individual. La.C.Cr.P. art. 215.1; State v. Britton, 93-1990 (La. 1/27/94), 633 So.2d 1208, 1209.

. The March 3, 2015 Minute Entry for the disposition hearing states "See Judgment in Record.”