Judgment rendered May 5, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,934-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

EMILIO TAYLOR                               Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 358,281

Honorable Charles Gordon Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
WILLIAM C. GASKINS
Assistant District Attorneys

* * * * *

Before GARRETT, COX, and BLEICH (*Pro Tempore*), JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Following a unanimous jury verdict, defendant, Emilio Taylor, ("Taylor") was convicted of armed robbery (count one) in violation of La. R.S. 14:64 with the additional enhancement penalty for use of a firearm (count two) in violation of La. R.S. 14:64.3. Thereafter, Taylor was adjudicated a second felony offender and sentenced to 35 years at hard labor without benefit of probation, parole, or suspension of sentence imposed on count one, to be served consecutively with a five-year sentence, without benefits, for count two.

On appeal, Taylor presents four assignments of error: first, Taylor challenges the sufficiency of the evidence used to support his conviction; second, Taylor argues that he was not advised of his right to a 15-day delay period pursuant to La. R.S. 15:529.1, and is entitled to have this matter remanded; next, he asserts that the transcript of the guilty plea used to adjudicate him as a second felony offender revealed that he was not advised of his right to a trial by jury; finally, Taylor argues that the imposition of his sentence is unconstitutionally harsh and excessive such that the trial court erred in denying his motion to reconsider the sentence.

For the following reasons, we affirm Taylor's conviction, vacate the multiple offender adjudication, and remand this matter for further proceedings.

**FACTS**

On May 24, 2018, as Family Dollar employees, Destini Hall ("Hall") and Clark Remedies ("Remedies") were closing the store, a man wearing

sunglasses, a hat, and a bandana over his face, entered the store. After Remedies exited the restroom near the rear of the store, the man held Remedies at gun point and forced him back toward the front of the store, where he demanded that Hall empty the contents of the register into a pink bag. Next, the man ordered Remedies to open the safe, and after Remedies refused, he struck Remedies on the head with the gun. Once the safe was opened and its contents placed into the pink bag, the man forced Hall and Remedies to the back of the store, where he then exited through a back door.

Remedies identified the man who robbed the store as Taylor to responding officers. On May 31, an arrest and search warrant were executed at Taylor's home. Officers arrested Taylor, and during the search of his home, recovered approximately $1,595 dollars in cash and a nine-millimeter handgun. On January 23, 2019, by amended bill of information, Taylor was charged with one count of armed robbery with the additional penalty of use of a firearm. On February 11, 2020, a jury trial commenced. In addition to video surveillance of the robbery captured by store security cameras, the following testimony was provided at trial.

First, Hall testified that on May 24, 2018, she worked the closing shift at the Family Dollar on Lakeshore Drive when the store was robbed. Hall stated that a few minutes after she started counting the money in her register, she heard talking and then saw a man walking toward the front of the store holding a gun to Remedies' head. The man approached Hall, told her he didn't want to hurt anyone, gave her a pink bag, and ordered her to put the money from the register into the bag. Hall then testified that the man ordered Remedies to open the safe. After Remedies stated that he couldn't,

the man repeatedly hit Remedies on the head with the gun until Remedies eventually opened the safe, and Hall was then told to place the money from the safe into the pink bag. Hall then testified that she could see some of the details of the weapon that the man used. In particular, she noted that the man used a semi-automatic gun and that the handle of the gun appeared as though it had "a brown trim on the handle." Hall then reviewed the surveillance footage of the robbery and confirmed that the events of the day in question were accurately reflected in the video and consistent with her testimony.

Next, during Remedies' examination, he reviewed the surveillance footage and confirmed that the events of the robbery were accurately reflected in the video. In particular, Remedies testified that after he emerged from the restroom in the back of the store, he was confronted by a man in shades, a hat, and a bandana over his face. He stated that the man forced him to the front of the store and hit him over the head with a gun after he initially refused to open the store safe upon demand. Remedies stated that he immediately told responding officers that the man who robbed the store was Taylor. Although Hall testified that she had neither seen nor worked with Taylor before, Remedies testified that he was able to positively identify the perpetrator as Taylor because he used to work with Taylor.

Specifically, Remedies stated that he was able to recognize Taylor by his voice and build. Remedies testified that two days prior to the robbery, Taylor texted him, wondering if he was at work. Remedies testified that Taylor called and asked if he would help rob the store, to which he declined

3

and asked Taylor not to rob the store. After the call, Remedies stated that he reported this information to the store's district manager.

Corporal Robert Cerami ("Cpl. Cerami") of the Shreveport Police Department ("SPD") testified that in May 2018, he assisted in the execution of the search warrant for Taylor's residence. As a result of the search, he testified that cash and a handgun located within a dresser were recovered. On cross-examination, Cpl. Cerami testified that although the handgun and cash were recovered from the search of the home, no pink bag, hat, or bandana was ever discovered.

Following Cpl. Cerami's testimony, Detective Richard Turpen ("Det. Turpen") of the SPD, who also participated in the arrest and search of Taylor's home, testified that Taylor was found hiding in the attic of his home, and after Taylor's oral and written consent was obtained, a handgun and cash were recovered. [1] Det. Turpen also reviewed the surveillance footage and testified that during the robbery, the perpetrator's hat fell off and revealed that the man's hair was styled into what was described as "puffs" or "pom-poms." To this, outside the presence of the jury, it was noted that during Det. Turpen's investigation, Taylor made a phone call to his girlfriend in jail on May 26, 2018. During the monitored call, Taylor's girlfriend asked if he wanted her to do his hair when she got out of jail, to which Taylor responded that he had already had his hair done. [2] Within the

---

[1] Det. Turpen identified the handgun as a Browning nine-millimeter handgun semiautomatic, with a black tarnished colored barrel trigger, with a wooden handle or grips. The amount of cash recovered from the home was approximately $1,595, and the identified amount taken from the store during the robbery was a little more than $3,000.

[2] The trial court limited the State's questioning regarding the jail call regarding Taylor's hair on the basis of relevancy. Specifically, the court stated that, "[t]he only thing I think you should be entitled to let the jury know is that some girl asked him if he

presence of the jury, Det. Turpen stated that on the date of Taylor's arrest, his hair was styled into longer thinner dreads, and that he monitored the jail conversation between Taylor and his girlfriend and confirmed that the two discussed Taylor's hair.

At the close of testimony, the jury returned a unanimous guilty verdict and Taylor was convicted as charged. The trial court denied Taylor's motion for a new trial and post-verdict judgment of acquittal. On March 11, 2020, the State of Louisiana ("the State") tendered a sentencing offer of 25 years at hard labor without benefits for the armed robbery charge, with a consecutive 35-year sentence for the enhanced firearm penalty. In exchange, the State offered to dismiss a pending charge for attempted murder and would forgo filing a habitual offender bill. On June 25, 2020, Taylor rejected the State's offer, the State filed a second felony habitual offender bill, and the habitual offender hearing commenced that day. At the conclusion of the hearing, the trial court sentenced Taylor to thirty-five years at hard labor, without benefits, with a five-year sentence for the enhanced firearm penalty. This appealed followed.

## DISCUSSION

*Sufficiency of the Evidence*

In Taylor's first assignment of error, he asserts that there was insufficient evidence presented at trial for the State to prove beyond a reasonable doubt that he was guilty of the offense in question. In particular, Taylor notes first that although Remedies claimed to have recognized the

---

wanted her to do his hair and he said, no, he'd already taken care of it." Likewise, the defense noted its objection to the admission of the call as irrelevant and speculative.

man who robbed the store as Taylor by his voice and build, the description provided by both Remedies and Hall, as well as the video footage itself, was simply of a man wearing a hat, shades, and a bandana covering his face.

Taylor argues that the hairstyle of the man seen in the video was styled into "puffs" or "pom-poms," and Taylor's own hair, at the time of the arrest, as corroborated by Det. Turpen, was styled into longer dreads. The State argued at trial that a phone call between Taylor and his girlfriend, in which she asked if Taylor wanted her to do his hair, explained the difference in hairstyles of Taylor at the time of the arrest as opposed to the man in the video. To this, Taylor argues that throughout the duration of the phone call, no corroborating evidence was discussed to confirm that Taylor ever changed the style of his hair after the robbery occurred. Specifically, Taylor notes that during the conversation with his girlfriend: 1) the pair never discussed a robbery at any point; 2) Taylor never stated what he would possibly want her to do to his hair; 3) there was no mention of Taylor getting any sort of extensions placed in his hair to give him longer dreads; and 4) Taylor never stated when he got his hair done, only that he had already gotten it done so there was no need for his girlfriend to do it.

In addition to the sufficiency of the evidence regarding his style of hair in connection with the robbery, Taylor contends that the testimony of Remedies was also insufficient to prove that he committed the robbery. Taylor asserts that although Remedies claimed that Taylor contacted him through both text and a phone call a few days prior to the robbery to solicit Remedies' help in robbing the store, evidence of the conversation was never presented. Taylor points out that phone records were never introduced to

6

show that Remedies had in fact received a phone call or text from Taylor, although Det. Turpen testified that he saw a text message that inquired about whether Remedies was at work. Taylor notes that even though Remedies claimed to have reported the conversation to the district manager of the store, no one was called to testify to confirm that the conversation occurred.

Finally, Taylor argues that the only physical evidence recovered, the cash and handgun, did not match the description provided by Hall and Remedies. Taylor asserts that the amount of money recovered from his home did not match the amount allegedly taken from the store. Taylor argues that approximately $1,595 was recovered from his home, whereas Det. Turpen testified that approximately $3,000 was taken from the store, although both Remedies and Hall testified that they were unsure as to the amount taken. With respect to the gun, Hall testified that the gun was a semiautomatic with a brown trim on the handle; in contrast, Remedies testified that the gun was brown and silver. However, the handgun recovered from Taylor's home was described as having a black tarnished colored barrel and a wooden handle or grip. Cpl. Cerami and Det. Turpen testified that the gun found in Taylor's home would not be the only gun which would fit the description provided. Moreover, Taylor notes that no effort was made to see if the gun recovered from his home contained Remedies' DNA, nor were any of the identifying items seen on the man in the surveillance footage found in his home.

In contrast, the State maintains that the evidence produced at trial proved beyond a reasonable doubt that Taylor committed the armed robbery. Specifically, the State argues that the testimony of the witnesses, particularly

7

that of Remedies, was sufficient to identify Taylor as the perpetrator. The State argues that Remedies' testimony established that before the robbery, he had known Taylor for more than a year because the two worked at Family Dollar together and Taylor would often frequent the store to purchase personal items. The State notes that Remedies testified that a few days prior to the robbery, Taylor contacted him to help rob the store. From his repeated interaction with Taylor, coupled with the conversation about robbing the store, Remedies was able to positively identify Taylor by his voice and physical build on the date of the robbery, even though Taylor attempted to disguise his person.

The State further notes that Remedies had ample time to identify Taylor: he was within Taylor's presence from the moment he exited the restroom in the back of the store, he was held at gunpoint and forced to the front of the store as Hall emptied the contents of her register into a pink bag, he was made to open the safe, and he was then forced to the rear of the store. Considering Remedies' past association with Taylor and the events and duration of the robbery, the State argues that Remedies made a positive identification of Taylor on the date in question. Importantly, however, the State notes that the jury, after having heard the testimony presented, found Remedies to be a credible witness, and that this credibility call should not be overturned.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 05/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 02/22/06), 922 So. 2d 517; *State v. Steines*, 51, 698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v.*

*Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not cons.*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 04/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 152 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 05/09/07), 956 So. 2d 769. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36, 180 (La. App. 2 Cir. 09/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 06/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 08/30/03), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Moreover, in a case where a defendant claims he was not the person who committed the offense, the *Jackson* standard requires that the prosecution negate any reasonable probability of misidentification. *State v. Green*, 38, 335 (La. App. 2 Cir. 5/12/04), 873 So. 2d 889, *writ denied*, 04-1795 (La. 11/24/04), 888 So. 2d 227; *State v. Powell,* 27,959 (La. App. 2 Cir. 4/12/96), 677 So. 2d 1008, *writ denied*, 96-1807 (La. 2/21/97), 688 So. 2d 520. Positive identification by one eyewitness or victim may suffice to

support a conviction. *State v. Hughes*, 05-0992 (La. 11/29/06), 943 So. 2d 1047, 1051; *State v. Green, supra.*

In the present case, after viewing the evidence in the light most favorable to the State, we find that the evidence produced at trial was sufficient to convict Taylor of the charged offense. Here, Taylor was charged with armed robbery in violation of La. R.S. 14:64, which states in pertinent part:

> Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon

Likewise, Taylor was charged with use of a firearm in violation of La. R.S. 14:64.3 which provides:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

The evidence in this case, namely the testimony provided by Remedies, clearly establishes that Remedies was able to positively identify Taylor as the man who robbed the store.

Remedies testified that he not only worked with Taylor for over a year, but that even after Taylor stopped working at the Family Dollar, he continued to see him whenever Taylor would purchase items from the store. Although Taylor argues that none of the identifying articles of the man in the surveillance footage were found in his home, that Remedies and Hall provided differing descriptions of the gun used, the amount of money actually recovered differed from what was taken at the store, and the fact the

11

style of his hair was different than the hairstyle of the man as seen in the surveillance footage, we note that the jury weighed the evidence presented and made a credibility determination as to Remedies' testimony. Because great deference is given toward a jury's decision to either accept or reject the testimony of a witness in whole or in part, this Court will not re-evaluate the credibility of a witness or reweight the evidence presented. Despite these inconsistencies, the jury unanimously determined that Remedies' testimony—that he was absolutely certain that Taylor was the perpetrator of the offense—was true.

Therefore, we find that, in the absence of any internal contradiction or irreconcilable conflict with the physical evidence, Remedies' testimony, as believed by the trier of fact, was sufficient to support a factual conclusion of Taylor's guilt beyond a reasonable doubt.

*Habitual Offender Proceeding*

In Taylor's second and third assignments of error, he argues that he was improperly adjudicated as a second felony offender. Taylor argues that the trial court failed to properly advise him of his rights under La. R.S. 15:529.1 and the transcript of his previous felony conviction failed to reveal advisement of Taylor's right to a jury trial. With respect to Taylor's first assertion, he specifically claims that the trial court failed to properly advise him that he was entitled to 15 days in which he could file an objection to the multiple offender bill, and was subsequently deprived of the opportunity to avail himself of the  days to prepare an objection to the habitual offender allegations.

12

Taylor notes that La. R.S. 15:529.1 (D)(1)(a) states that if a defendant denies the allegations of the habitual offender bill of information, he shall be given 15 days within which to file particular objections to the bill. Given a plain reading of the statute, Taylor argues that the failure to strictly comply with the mandates of this statute is error patent. Although this error is not generally regarded as error patent, Taylor nevertheless maintains that the statute provides a mandatory 15-day delay period which should not be assumed to be waived in the absence of an explicit waiver. Because the trial court failed to advise him of this right, Taylor argues that this matter should be set aside and remanded to provide Taylor adequate opportunity to file written objections.

Taylor further argues that his adjudication as a second felony offender should be set aside because the guilty plea forming the basis of his prior offense used to adjudicate him as a second felony offender was inadequate. Taylor argues that his February 2015 guilty plea for unauthorized entry of an inhabited dwelling could not be used as a predicate offense in the habitual offender proceeding because he was not properly advised at that time that he had a right to a *jury trial*, only that he had a right to a trial; thus, his plea was not given freely and voluntarily. Consequently, the State failed to satisfy its burden of proof in this matter and his adjudication should be set aside.

In response, the State concedes that Taylor was not advised of or given a 15-day delay period before the hearing commenced. However, it maintains that Taylor's failure to contemporaneously object to the commencement of the hearing should bar him of any review of this claim because La. C. Cr. P. art 841(A) provides that "[a]n irregularity or error

13

cannot be availed of after a verdict unless it was objected to at the time of the occurrence." Accordingly, the State asserts that a defendant's failure to raise an objection in opposition to any procedural irregularity during the hearing bars him from appellate review on the matter.

In the alternative, the State argues that even if this Court should find that the failure to advise Taylor of his La. R.S. 15:529.1 rights is error patent, the failure should nevertheless be considered harmless error. The State notes that the failure to advise a defendant of his constitutional rights to remain silent, to a formal hearing, and to have the State prove that he is a multiple offender during a habitual offender proceeding is error patent, but may be considered harmless error. *State v. Lynn*, 52,125 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1262, *writ denied*, 18-1529 (La. 4/15/19), 267 So. 3d 1129; *State v. Goosby,* 47,772 (La. App. 2 Cir. 3/6/13), 111 So. 3d 494, *writ denied*, 13-0760 (La. 11/1/13), 125 So. 3d 418; *State v. Delaney*, 42,990 (La. App. 2 Cir. 2/13/08), 975 So. 2d 789*; State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077.

The failure to advise of these rights is "not considered reversible error where the defendant's habitual offender status is established by competent evidence offered by the [S]tate at a hearing rather than by admission of the defendant." Because these constitutional rights and the 15-day delay period are encapsulated within the same statute, the State argues that the same principle should likewise apply if the failure to advise a defendant of the 15-day delay is considered error patent. The State asserts Taylor's status as a second felony offender was established by competent evidence such that he

14

suffered no prejudice in the delay; thus, the error should be regarded as harmless and Taylor's adjudication should not be set aside.

With respect to Taylor's assertion that the State failed to satisfy its burden in proving he was a second felony offender because the transcript used to adjudicate him as such was "imperfect," the State contends under *State v. Shelton*, 621 So. 2d 779-80 (La. 1993), it was not required to produce a "perfect" transcript" or to prove Taylor actually waived his *Boykin* rights when he pled guilty to the predicate offense. Instead, the State argues it can meet its burden through the introduction of a "guilty plea form, a minute entry, an 'imperfect' transcript, or any combination thereof." *State v. Roland*, 49,660 (La. App. 2 Cir. 2/27/15), 162 So. 3d 558, *writ denied*, 15-0596 (La. 2/19/16), 186 So. 3d 1174. The State notes that after Taylor pled not guilty to the habitual offender bill, it introduced the bill of information and the minutes and fingerprint attachment sheet from the plea in Taylor's prior conviction, which was sufficient to prove that Taylor committed the previous offense.

After it satisfied its burden, the State contends that the burden then shifted to Taylor to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in taking the plea. Taylor failed to produce any evidence to show that there was any infringement of his rights or an irregularity occurred in his prior guilty plea. Moreover, Taylor failed to challenge the validity of his prior guilty plea by filing a motion to quash the habitual offender bill. As such, the State argues that it satisfied its burden of proof at the habitual offender adjudication, and

this assignment of error is not properly before this Court for review and should not be considered.

In addressing both assignments of error, we find merit in Taylor's arguments and set aside his adjudication as a second-felony habitual offender and remand this matter to the trial court. Taylor contends that his status as a second felony offender should be set aside because the trial court did not advise him of his 15-day delay period in which he could file an objection to the habitual offender bill. La. R.S. 15:529.1(D)(1)(a) provides in part:

> Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. **If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he *shall be given 15 days* to file particular objections to the information**, as provided in Subparagraph (b) of this Paragraph.

(Emphasis added).

However, La. C. Cr. P. art 841(A), known as the contemporaneous objection rule, provides:

> **An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.** A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

(Emphasis added).

Subsequently, case law has generally held that a failure to raise an objection prior to the habitual offender hearing precludes a review on

16

appeal. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368, *cert. denied*, 520 U.S. 1199, 117 S. Ct. 1558, 137 L. Ed. 2d 705 (1997); *State v. Williams*, 47,733 (La. App. 2 Cir. 2/27/13), 110 So. 3d 246; *State v. Davenport*, 43,101 (La. App. 2 Cir. 3/19/08), 978 So. 2d 1189; *State v. Common,* 13-488 (La. App. 5 Cir 2/26/14) 132 So. 2d 1282; *State v. Hill*, 16-0123 (La. App. 4 Cir. 6/1/16), 194 So. 3d 1262; *State v. Drummer*, 99-0857 (La. App. 4 Cir. 3/15/00), 756 So. 2d 610); *State v. Langley*, 95-2029 (La. App. 4 Cir. 9/4/96), 680 So. 2d 717. Therefore, a defendant must either orally or by written motion make a contemporaneous objection or response to the alleged error or it constitutes a waiver. *State v. Braziel*, 42,668 (La. App. 2 Cir. 10/24/07), 968 So. 2d 853; *State v. Qualls*, 40,630 (La. App. 2 Cir. 1/27/06), 921 So. 2d 226.

However, we find that the particular facts of this case are distinguishable from these cases and warrant appellate review. For example, in *State v. Common, supra,* the defendant objected to his adjudication as a second felony offender, in part, because he was not advised that he had 15 days to file an objection to the bill or was given the opportunity to avail himself of the 15 days. *Id*. The Fifth Circuit determined it was unnecessary to advise the defendant of this right under La. R.S. 15:529.1 because he admitted to the allegations in the multiple offender bill. *Id.* Moreover, the court noted that the defendant was properly advised of his right to remain silent. *Id*. As such, the court determined that the 15-day time period in which the defendant had to object to the multiple offender bill was inapplicable. *Id*.

17

Similarly, in *State v. Drummer*, *supra*, the defendant claimed that his adjudication as a multiple offender should be set aside because the trial court failed to give him 15 days to file objections to the multiple offender bill. The Fourth Circuit noted that not only did the defendant fail to contemporaneously object to the error, but he was given an opportunity to research the issue. *Id.* Specifically, the court noted that the multiple offender bill of information was filed, and the hearing took place on October 9th, to which the defendant objected to the predicate offense and the hearing recessed until October 23rd. *Id.* Accordingly, the court found that even if there was any error in failing to grant the defendant 15 days, the defendant was not prejudiced because of the allotted extra time. *Id.* *See also*, *State. v. Langley*, *supra* (the Fourth Circuit found that the defendant was given an additional 30 days from the date on which the habitual offender bill was filed such that the failure to advise him of his 15 days to object was without merit.).

Further, in *State v. Williams*, *supra*, the Second Circuit found that a defendant who was not provided 15 days to object to the allegations in the habitual offender bill lacked merit to bring the claim. Although the defendant did not answer the allegations in the habitual offender bill, he was afforded an adequate opportunity to prepare for the hearing and file a motion to quash in response. Notably, the bill was filed on December 15, 2011, but the hearing did not take place until March 2, 2012. The court found that because the defendant failed to object and was ready to proceed at the hearing, his assignment of error lacked merit.

Finally, in *State v. Davenport*, *supra*, the defendant argued that his status as a multiple offender should be reversed because the State did not file the multiple offender bill until the hearing had already commenced. *Id*. This Court noted that the State filed a supplemental discovery response on January 17, 2007, and the hearing was conducted on March 14, 2007 at which time it was stated that the habitual offender bill would be filed. *Id*. Importantly, counsel for the defendant stated he was aware that the bill would be filed and that he had received discovery related to the bill. *Id*. The record reflected that the trial court informed the defendant that he was "entitled to discovery in connection with this matter within 15 days of said arraignment." *Id*. Moreover, the defendant did not object to the late filing of the bill or that he was not given any delay to respond to the bill. *Id*. This Court held that any error in the late filing of the bill was harmless because the defendant's counsel was aware that the bill would be filed and the State provided him with discovery regarding the prior conviction two months prior to the hearing. *Id*.

In the present case, we acknowledge that although Taylor never made a contemporaneous objection to the failure to advise him of the 15 days, he, unlike the defendant in *State v. Common*, *supra*, as reflected by the record, never admitted to the allegation that he was a second felony offender in the multiple offender bill. Moreover, the period of time between which supplemental discovery was filed, the multiple offender bill was filed, and the hearing occurred did not adequately afford Taylor the opportunity to assess the discovery or research the issue in order to object to the bill. In particular, the defendants in *State v. Drummer*, *supra*, *State v. Williams*,

19

*supra*, and *State v. Davenport*, *supra*, were each afforded adequate opportunity in which to receive discovery and respond to the multiple offender bill. Moreover, the record in *State v. Davenport, supra,* reflects that not only was counsel given two months in which to prepare, but counsel stated at the hearing that he was not only aware that the State would file the multiple offender bill, but that he received discovery on the matter well in advance of the hearing.

Although the State in this case offered Taylor a sentence deal on March 11, 2020, which included an agreement not to pursue the habitual offender bill, we note that the State filed supplemental discovery on June 24, 2020, which was titled "Supplemental Response to Defendant's Motion for Discovery," and detailed that the response included a certified lab report. On June 25, 2020, after Taylor rejected the offer, the State filed the habitual offender bill, and the hearing took place that same day. Taylor, unlike the defendants in the above-mentioned cases, was not provided with the entirety of the State's discovery until the *day before* the hearing commenced and it was not titled as discovery concerning the habitual offender hearing. The trial court neither recessed the matter in order to give counsel time in which to research and prepare for the hearing, nor does the record reflect that counsel was aware of the previously filed discovery because there was no discussion of the filing during the hearing.

Moreover, in turning to the language of the statute itself, La. R.S. 15:529.1(D) states, in part, "[i]f [a defendant] denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he *shall be given [15] days* to file

20

particular objections." The principles of statutory construction are well settled. Words and phrases must be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. "The word 'shall' is mandatory and the word 'may' is permissive." *Id*.; *McGlothlin v*. *Christus St. Patrick Hosp*., 10-2775 (La. 7/1/11), 65 So. 3d 1218; *Powell v*. *J & R Enterprises-Shreveport*, *LLC*, 47,013 (La. App. 2 Cir. 4/11/12), 91 So. 3d 1185.

Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each provision, and that no unnecessary words or provisions were employed. *McGlothlin*, *supra*, citing *Colvin v. Louisiana Patient's Comp. Fund Oversight Bd*., 06-1104 (La. 1/17/07), 947 So. 2d 15, and *Moss v. State*, 05-1963 (La. 4/4/06), 925 So. 2d 1185. A statute must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it.*" Holly & Smith Architects, Inc*. *v*. *St. Helena Congregate Facility, Inc*., 06-0582 (La. 11/29/06), 943 So. 2d 1037. Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. *McGlothlin*, *supra*.

La. R.S. 15:529.1 is clear and unambiguous. The provision is mandatory and requires that a defendant be given 15 days in which to respond to a habitual bill of information filed against him if he either denies the allegation of the information, refuses to answer, or remains silent. In response to the multiple offender bill filed against him, Taylor remained

21

silent; as such, he should have been afforded 15 days in which to file objections to the bill. Therefore, it is our position that Taylor was not precluded from bringing this error on appeal despite not having objected to it at trial.

In the alternative, the State, in comparing the 15-day delay requirement to a defendant's constitutional rights, namely the right to remain silent, to a formal hearing, and to have the State prove that he is a multiple offender, argues that the failure to advise Taylor of his rights is harmless.

As a general proposition, before a defendant's admission to his status as a multiple offender is accepted, the trial court must specifically advise him of his right to a formal hearing, his right to require the State to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1; *State v. Grimble*, 51, 446 (La. App. 2 Cir. 7/5/17), 224 So. 3d 498; *see also*, *State v. Odom*, 34,054 (La. App. 2 Cir. 11/1/00), 772 So. 2d 281. The failure to properly advise a defendant of his rights under the habitual offender statue constitutes error patent on the face of the record and requires that the adjudication be vacated. *State v. Grimble*, *supra*. In the present case, Taylor was not properly advised of his rights. The trial court stated:

> All right, Mr. Taylor, you've been charged as a second offender under our law and the state has to prove, of course, that you are a second offender. And that's what we'll having a hearing about to discuss today is to determine whether or not the state can prove that you are guilty as a second felony offender. I don't know what else to advise you of. Obviously, you have a right to appeal any decision that's made here today as to whether you are a second offender or not, but I don't know what other rights I need to advise you of so we'll proceed with the hearing.

During this colloquy, we find that the court failed to properly advise Taylor of his right to have 15 days in which to object to the bill, which

22

constitutes an error on the face of the record. In the comparison of this right to the right to remain silent, this Court acknowledges that the failure to inform a defendant of his right to remain silent during a habitual offender proceeding, under certain circumstances, may be considered harmless error. *State v. Lynn*, 52,125 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1262, 1272-73, *writ denied*, 18-1529 (La. 4/15/19), 267 So. 3d 1129; *State v. Goosby, supra*; *State v. Delaney*, 42,990 (La. App. 2 Cir. 2/13/08), 975 So. 2d 789; *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077.

The State cites *State v. McCadney*, 98-3026 (La. App. 4 Cir. 4/19/00), 761 So. 2d 579, as further evidence that the failure to advise of the 15-day delay should not be considered error patent. However, we note that the Fourth Circuit, in arguendo, considered the delay as error patent. The court stated, ". . . even assuming this is an error patent-being discoverable by the mere inspection of the pleadings and proceedings-defendant cites no prejudice as a result of any such error, failing to suggest any defects relating to any of his prior convictions. Therefore, defendant would not be entitled to any such relief based on such error." *Id*.

Distinguishably, we find that unlike the defendant in *State v. McCadney, supra*, in the failure to advise of the 15 days, Taylor was prejudiced. Specifically, Taylor noted that the transcript used to convict him as a second felony offender reflected that during his previous conviction, he was not advised of his right to a jury trial. Therefore, despite the State's assertion that because it produced competent evidence to adjudicate Taylor as a multiple offender, the failure to advise him of this right was harmless is inaccurate.

23

The failure to advise a defendant of these rights is considered harmless error when the defendant's habitual offender status is established by *competent evidence* offered by the State at the hearing rather than by admission of the defendant. *State v. Nobles*, 53,453 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1192; *State v. Lynn*, *supra*; *State v. Hart*, 10-905 (La. App. 5 Cir. 5/10/11) 66 So. 3d 44. Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), states, in pertinent part:

> Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. . . A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

In *State v. Shelton*, *supra*, the Louisiana Supreme Court discussed the State's burden of proof in a habitual offender proceeding as follows:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's

24

prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

In the instant case, Taylor neither admitted to nor denied the allegation in the habitual offender bill. Instead, at the hearing, the State presented evidence in the form of the bill of information, the minute entry, and the fingerprint attachment sheet from Taylor's prior conviction. Assuming that the State met its initial burden under *State v. Shelton*, *supra*, the burden shifted to Taylor to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. Only if this was done, would the burden then shift to the State to prove that the pleas were constitutional through a "perfect" transcript or some other means. *State v. Shelton*, *supra*.

Under the particular facts and circumstances of this case, the State did not file the supplemental discovery until the day before the hearing and it is not clear from the record that Taylor even received it before the hearing. Further, the judge did not advise Taylor of his right to a 15-day delay period in which to file objections and incorrectly applied the law to the habitual offender bill. Based on theses facts, we must vacate the habitual offender sentence adjudicating Taylor as a second felony offender and remand this matter for further proceedings.

*Excessive Sentence*

In Taylor's final assignment of error, he argues that the imposition of his sentence as a second felony offender is unconstitutionally harsh and excessive because the court failed to consider his personal history or any mitigating factors, and instead, relied on the same factors used to convict him of the firearm enhancement as an aggravating factor. We note that the

25

trial court imposed a sentence of 35 years for the charge of armed robbery. This sentence is only two years more than the legislatively prescribed minimum for a second-felony offender convicted of armed robbery and falls below the midrange sentence for this particular offense. Nevertheless, because we vacate Taylor's habitual offender proceeding, this assignment of error is rendered moot.

## CONCLUSION

For the aforementioned reasons, Taylor's conviction is affirmed; the adjudication of Taylor as a second felony offender is vacated and remanded for further proceedings.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**