873 So.2d 889 (2004)
STATE of Louisiana, Appellee
v.
Darylon D. GREEN, Appellant.
No. 38,335-KA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
Rehearing Denied June 17, 2004.
*892 William D. Hall, P.L.C., Shreveport, for Appellant.
J. Schuyler Marvin, District Attorney, Jeff Cox, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART & PEATROSS, JJ.
PEATROSS, J.
Defendant, Darylon D. Green, was charged with armed robbery, in violation of La. R.S. 14:64[1] and 14:64.3.[2] He was tried by a jury and convicted as charged. Prior to sentencing, Defendant moved for a verdict of acquittal, but this motion was denied. Subsequently, Defendant was adjudicated an habitual offender and sentenced to 49 and one-half years at hard labor, without benefit of probation, parole or suspension of sentence. He was ordered to serve the sentence consecutively with any other sentence and he was given credit for time served. Defendant moved for reconsideration of his sentence, but the motion was denied. He now appeals his conviction and sentence. For the reasons stated herein, we affirm.

FACTS
This armed robbery of a Domino's Pizza employee occurred on the night of October 16, 2000. That evening, Ray Mason ("Mason") and Defendant came to the apartment of Latisha Smith ("Smith") on Edwards Street in Bossier City. Mason is Smith's cousin. Smith knew Defendant as "LaDarion Green." She also knew him as a close friend of Mason and she often saw them together. Mason and Defendant asked to use Smith's phone to call for a pizza. Smith watched and listened as Defendant ordered a pizza to be delivered to an address on Joannes Street. Defendant used Mason's name for the order. Mason was in the restroom at the time of the call. At trial, Smith could not remember the order other than hearing it was a "meatlovers" pizza. In her statement to the police the day after the robbery, Smith recalled that the order was two large pizzas and two large Cokes. The time of this call is not clear. In her trial testimony, Smith estimated that it was just getting dark when Mason and Defendant came over. Mason and Defendant later left Smith's house. She did not see them again that evening.
During the time that Mason and Defendant were at her house, Smith saw that either Mason or Defendant had a handgun. In her statement to the police, Smith said that Mason had a handgun. In her trial testimony, however, Smith stated that Defendant had a handgun that she recognized as belonging to Mason. She explained the discrepancy that it was Mason's gun, but in Defendant's possession.
On the night of the incident, Domino's Pizza received a call for a pizza to be delivered to 645 Joannes Street in Bossier City. Steve Shearin ("Shearin") made the delivery. He arrived alone at the address *893 between 11:30 and midnight. He got out of his van and asked a young man on the porch if the address was 645. The young man, Mason, told him it was 645. Mason was wearing a blue sweater jacket with a hood over his head, but Shearin could see his face. When Shearin got to the front door with the pizza, he looked up and there was a gun pointed at his head. Shearin described it as a light brown nine-millimeter automatic. Mason said, "Give me the money, dog." Shearin gave Mason all of the money he had. Mason then told Shearin to get on the ground. Shearin got down on his hands and knees. When Shearin got down, he tossed his watch and keys next to a fence.
As Shearin was on the ground, he saw another young man with a white-hooded jacket. Initially, Shearin could not see this man's face. This man kept telling Shearin that he had to have more than $48. Shearin told him that he had some money in his van. The second young man asked Shearin for the keys and Shearin told him he had lost them. As the young man paced around, agitated about the missing keys, Shearin could see that he was also holding a handgun, which he pointed at Shearin a couple of times. Shearin recognized it as an automatic.
The two robbers then went to Shearin's van to look for more money and to get the van started. As they opened the door, the interior light came on and Shearin was able to see the face of the young man in the white sweatshirt. At trial, Shearin identified this man as Defendant. Defendant got the van started without a key.
Mason then told Shearin to get up and get into the house. Shearin was nervous, but Mason told him that "You ain't going to die, I'm not going to kill you because you're black." The house was vacant, without any furniture or electricity. Mason made Shearin strip off his clothes and get into a closet and count to 150. Defendant did not go into the house with Mason. Shearin got into the closet and counted to 150. He later found his clothes in a corner of the front room. Shearin's van was gone.
Shearin walked down Texas Street, then Old Minden Road until he found a police officer, Mark Owens, who took him back to the house. Shearin found his keys where he had hidden them. At about 2:00 a.m., Shearin's van was found abandoned on Jordan Street in Shreveport.
The next day the police showed Shearin a photographic lineup in an attempt to identify the young man in the blue sweatshirt. Shearin immediately identified Mason as the first robber. The first time Shearin identified the second robber in the white sweatshirt as being Defendant was the week of trial. Shearin was sitting on a bench in the courtroom when he saw Defendant get off the elevator in the corner of the courtroom. Shearin then recognized Defendant as the other robber.
During trial, Shearin acknowledged on cross examination that he had been unable to identify Defendant in a photographic lineup that occurred a few weeks earlier. When asked how he could identify Defendant in the courtroom, yet not identify him in the photographic lineup, Shearin stated it was just like meeting someone at law school, then seeing them years later and not knowing who they are until something clicks and you recognize them. Shearin then testified that, when he saw Defendant the second time, "It came back to me in my van and it clicked, I know that guy, that's the guy." Shearin further testified that there was no doubt that Defendant was the second robber; he was a "hundred percent positive, yes."
Detective Todd Hilbert investigated the case. The phone call to Domino's Pizza *894 was traced to Smith's phone. Detective Hilbert questioned Smith. She told him that Mason and a "LaDarion Green" came to her apartment to use her phone to call for a pizza. Detective Hilbert testified that Smith told him that she saw Mason with a handgun. The day after the robbery, Smith saw Mason. Mason told her that they had robbed the pizza delivery man, but only got forty something dollars. Mason thought it was funny how they had gotten the victim to disrobe. At trial, Smith identified Defendant as the "LaDarion Green" who ordered the pizza from her apartment.
On the evening after the robbery, Detective Hilbert prepared a photographic lineup of Mason for Shearin to examine. Detective Hilbert did not prepare a photographic lineup of Defendant because he was operating on the information that the other suspect was "LaDarion" Green, not Darylon Green. The lineup contained a photograph of Mason and five other males similar in appearance. Shearin immediately, and without hesitation, picked out Mason's photograph in the lower left-hand corner. Shearin's van was processed for fingerprints and Mason's fingerprints were found on one of Shearin's cassette tapes in the van.
Two days after the robbery, Mason contacted Detective Hilbert. Based on these statements, Defendant was arrested on November 8, 2000. The police did not prepare a photographic lineup of Defendant for Shearin to examine until close to the time of trial.
Mason and Defendant were tried together by jury trial. The voir dire produced a problem with one prospective juror, John Spurlock ("Spurlock"). Spurlock's voir dire was uneventful until the district attorney asked him if he had ever been charged with a crime:
DISTRICT ATTORNEY:
Have you, yourself, ever been charged with a crime?
MR. SPURLOCK:
Traffic only.
DISTRICT ATTORNEY:
I'm sorry.
MR. SPURLOCK:
Traffic.
DISTRICT ATTORNEY:
Only traffic offenses?
MR. SPURLOCK:
DWI.
DISTRICT ATTORNEY:
Would the fact that that occurred give you any reason to be impartial or excuse me, I should say partial or hold any ill will toward law enforcement or the DA's office or anyone like that?
MR. SPURLOCK:
No.
DISTRICT ATTORNEY:
How long was that?
MR. SPURLOCK:
Ninety-seven, I believe.
When questioned by Mason's counsel, Spurlock was asked:
MR. SHACKLETTE:
Okay, other than that, have you participated as a witness or party in any criminal trial?
* * *
MR. SPURLOCK:
No.
Spurlock was tentatively accepted as a juror and given the preliminary oath. The next day, the district attorney advised the trial court that he had conducted a criminal background check of Spurlock and found that he had not been truthful about his entire criminal record. The state sought to exercise a peremptory "strikeback" of Spurlock. Defendant asserted a *895 Batson[3] challenge, arguing that the State was racially motivated in singling out Spurlock, a black male, for a criminal background check. The trial court originally denied the Batson challenge, but withdrew the ruling when the State admitted that it was not certain that the information contained in the background check actually referred to the juror in question. The trial court granted Defendant's counsel's request that the voir dire be reopened for Spurlock to ensure that he was indeed the same person in the other convictions discovered by the district attorney and to determine if there was a race neutral reason for the peremptory challenge.
Spurlock was questioned again. When asked if he had other DWI convictions, Spurlock admitted that he had two or three more DWI convictions, other than the conviction he admitted to in his original voir dire. One was in 1999 and another was prior to the conviction he mentioned at trial. Spurlock also admitted to having been charged with simple escape and unauthorized use of a movable in Nashville, Tennessee, but those charges were apparently dismissed. After questioning, the trial court ruled that, since the juror was being untruthful when answering the previous questions about his being charged and convicted in the past, then this was a sufficient race neutral reason for the State's action in its peremptory challenge.
Subsequently, the jury, hearing the evidence related above, found both Mason and Defendant guilty of armed robbery. Defendant filed a motion for judgment of acquittal, alleging that the evidence was insufficient as a matter of law to support his conviction. Before this motion was heard by the trial court, the State filed a habitual offender bill of information alleging Defendant to be a second-felony offender. The bill alleged that Defendant had previously been convicted of simple burglary. On December 2, 2002, before ruling on the motion for judgment of acquittal, the trial court found Defendant to be a second-felony offender. Defendant waived delays and was sentenced to 49 and one-half years at hard labor, without benefit of probation, parole or suspension of sentence.
On January 2, 2003, Defendant filed a motion to reconsider sentence, alleging that the sentence was premature in that the trial court had not previously ruled on Defendant's motion for judgment of acquittal.
On August 13, 2003, the trial court granted Defendant's motion to reconsider sentence, vacated his original sentence, denied the motion for acquittal and resentenced him to 49 and one-half years at hard labor, without benefit of probation, parole or suspension of sentence. Defendant now appeals, raising the following assignments of error (verbatim):
1. The trial court erred in allowing the State to strike back a black juror after running a criminal records check, contrary to the holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1717[1712], 90 L.Ed.2d 69 (1986);
2. The trial court erred in holding that the evidence was sufficient to convict Darylon Green of the crime of armed robbery;
3. The trial court erred in finding that the identification of Darylon Green by the victim, Steve Shearin, was sufficient to prove that Darylon Green was a participant in the crime of armed robbery;
4. The trial court erred in accepting the testimony of Latisha Smith after her testimony had been impeached by prior statements made to the police *896 and it was proven that she lied under oath;
5. The trial court erred in denying Darylon Green's Motion for Judgment of Acquittal;
6. The trial court erred in determining that Darylon Green was a second felony offender; thus, the trial court erred in imposing a sentence of forty-nine and one-half (49 1/2) years pursuant to the Habitual Offender Law;
7. The trial court erred in failing to advise Darylon Green of his right to remain silent prior to questioning and adjudication as a second felony offender;
8. The trial court failed to adequately advise Darylon Green of his rights in connection with the hearing and plea to the multiple offender bill; and,
9. The trial court erred in imposing a constitutionally excessive sentence when it sentenced Darylon Green to serve forty-nine and one-half (49 1/2) year sentence pursuant to the Habitual Offender Law.

DISCUSSION

Sufficiency of the Evidence
In the second assignment of error, Defendant argues that the lack of physical evidence linking him to the robbery was insufficient, as a matter of law, to convict him of armed robbery. We disagree.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
To convict a defendant of armed robbery, the State is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation *897 (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01), 799 So.2d 684. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3). In the case sub judice, the State proved that Defendant used force while armed with a dangerous weapon to take money from Shearin.
Further, the State properly carried its burden of negating any reasonable probability of misidentification of Defendant as a person committing the armed robbery of Shearin. Smith testified that, on the night of the robbery, her cousin Mason and Defendant came to her apartment to use the phone to order a pizza. Smith positively identified Defendant as the person making the call to Domino's Pizza. Shearin positively identified Defendant as the person who robbed him. After reviewing the evidence in the light most favorable to the prosecution, we find that the jury could reasonably conclude that all of the elements of the armed robbery have been proved beyond a reasonable doubt. This assignment of error is without merit.

Witness Credibility
In his third and fourth assignments of error, Defendant questions the credibility of the witnesses. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, ___ U.S. ___, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). Smith's confusion as to the time of the call is irrelevant. The time of the offense is not an essential element in the proof of armed robbery. State v. Pickett, 261 La. 237, 259 So.2d 307 (La.1972). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760; 98-0282 (La.6/26/98), 719 So.2d 1048.
Moreover, a witness' failure to identify the suspect at a pretrial lineup is not grounds to bar the in-court identification; rather, it affects the weight of the testimony. Evidence may be introduced to explain any discrepancy. State v. Ford, 26,422 (La.App.2d Cir.9/21/94), 643 So.2d 293; State v. Chism, 591 So.2d 383 (La. App. 2d Cir.1991). Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990).
Shearin was able to identify Defendant when he saw him come into the courtroom. The victim provided the jurors a detailed explanation as to how you may not be able to recognize someone from years past until something triggers your memory. The jury was free to believe or disbelieve this explanation. The jury chose to give weight to the victim's explanation. The weight of the evidence in this case was sufficient to convict Defendant of the crime charged. The evidence at trial supported Defendant's conviction and the credibility determinations of the jury as to Shearin and Smith will not be disturbed on appeal. Defendant's third and fourth assignments of error are without merit.

*898 Post-Verdict Judgment of Acquittal

Defendant asserts in his fifth assignment of error that the trial court erred in denying his motion for post-verdict judgment of acquittal. La. C. Cr. P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La. 1992). In this case, the evidence previously mentioned, viewed in a light most favorable to the State, reasonably permits a finding that Defendant was involved in the planning, setup and execution of the armed robbery of Shearin. This assignment of error is without merit.

Batson Challenge
Defendant argues in his first assignment of error that the State was racially motivated in singling out a black juror for a criminal background check. We do not agree.
No formula exists for determining whether the defense has established a prima facie case of purposeful racial discrimination. A trial judge may take into account not only whether a pattern of strikes against African-American venire persons has emerged during voir dire but also whether "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498 (quoting Batson, supra). Batson accords a trial court considerable flexibility and broad discretion in this regard because "trial judges, experienced in supervising voir dire, will be able to decide if circumstances concerning a prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." Batson, supra.
The trial court in the instant case found that the State provided a race neutral reason for the background check and peremptory challenge. The record shows that the prospective juror first attempted to downplay his criminal history by asserting he only had "traffic" offenses. Next, the prospective juror only admitted to one DWI conviction, when, in fact, his record indicated several other offenses. The prospective juror was not truthful with his answers in voir dire. The record does not show that the trial court abused its discretion in finding that the prospective juror's initial responses justified further investigation by the State and that the subsequent peremptory challenge was race neutral because of the clear attempt by that prospective juror to conceal his criminal history. Simply put, the fact that the juror at issue was not truthful about his criminal history was a sufficient race neutral reason for the peremptory challenge. This assignment of error is without merit.

Sentence
Defendant argues in his final assignment of error that the sentence imposed on him was one of those rare situations in which the sentence makes no measurable contribution to acceptable goals of punishment and is grossly out of proportion to the severity of the crime. In summary, Defendant cites the following factors in support of his argument, addressed by the trial court during sentencing:
1. Defendant was only 21 years old when the robbery occurred.
2. Defendant had graduated from high school and attended college.
*899 3. Defendant was married with one child and three stepchildren.
4. Defendant was employed as a salesman for one and a half years.
5. Defendant's criminal record consisted of one felony, simple burglary, and additional misdemeanors, including misdemeanor theft, resisting an officer, possession of marijuana and simple battery.
La. R.S. 14:64(B) provides:
Whosoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:64.3 provides:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
La. R.S. 15:529.1(B)(2)(a) provides:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
A review of La. R.S. 15:529.1, in effect at the time of the offense, shows that Defendant, as a second felony offender, was subject to a sentence for the armed robbery, of not less than "one-half of the longest term and not more than twice the longest term prescribed for a first conviction." La. R.S. 15:529.1(A)(2)(a). La. R.S. 14:64(B) provides for a maximum sentence of armed robbery of 99 years at hard labor. One-half of that amount is 49 and one-half years. In addition, a firearm was used in this robbery. Further, in accordance with La. R.S. 14:64.3, listed above, five years must be added to this sentence. This being the case, Defendant was sentenced to the minimum sentence allowed under the habitual offender law, or actually, five years less than the total sentence required by statute.[4]
Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The mandatory sentences it requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 02-2875 (La.4/4/03), 840 So.2d 1213. Johnson, supra, and Wade, supra, also held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson, supra; Wade, supra.
*900 In addition, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason, for declaring such a sentence excessive. Johnson, supra; Wade, supra; State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339.
For authority, Defendant cites the case of State v. Terrell, 37,762 (La.App.2d Cir.11/18/03), 858 So.2d 1282. It should be noted that, in Terrell, supra, this court vacated a habitual offender sentence and remanded for the trial court to resentence in light of the reduction in the sentences in the Habitual Offender Law by the legislature following the offense. The provisions for a second-felony offender, La. R.S. 15:529.1(A)(2)(a), however, were not amended. This being the case, Terrell, supra, cannot be used to support a remand for consideration in light of legislative changes.
A review of the sentencing transcript shows that the trial court carefully considered Defendant's personal history, age, prior criminal history and the circumstances of this case in deciding on a proper sentence. The facts show that Defendant helped plan and then participated in the armed robbery of Shearin. Both robbers were armed. The victim was made to first kneel at gunpoint while his money and vehicle were stolen. Next, he was taken into a vacant house, ordered to disrobe and put in a closet while Defendant made his getaway. There is no showing by clear and convincing evidence that Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. The sentence imposed was within the limits of the habitual offender law and the trial court did not abuse its discretion in the sentence. This assignment of error is without merit.

Abandoned Assignments of Error
Defendant originally filed more assignments of error, listed as the sixth, seventh and eighth assignments of error, relating to sentencing and errors in his habitual offender bill of information. In his brief, Defendant stated that he was not briefing those assignments of error.
Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writs denied, 558 So.2d 1123 (La. 1990). We find, therefore, that the sixth, seventh and eighth assignments of error have been abandoned; and, therefore, will not be addressed herein.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Darylon D. Green, are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, PEATROSS, and MOORE, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 14:64(A) provides:

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
[2] La. R.S. 14:64.3(A) provides:

When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
[3] See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[4] We note that Louisiana jurisprudence has set forth that an appellate court should not correct an error that is favorable to a defendant where the issue is not raised by the State on appeal. See State v. Fraser, 484 So.2d 122 (La.1986).