Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,981-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LANCE ANDREW JOHNSTON                       Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 15F2132

Honorable Marcus Lamar Hunter, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

ROBERT S. TEW                        Counsel for Appellee
District Attorney

CARL D. WALKER
MARK K. WHITE
Assistant District Attorneys

* * * * *

Before MOORE, GARRETT, and COX, JJ.

**COX, J.**

This criminal appeal arises from the Fourth Judicial District Court, Ouachita Parish, Louisiana. A jury unanimously found defendant, Lance A. Johnston ("Johnston"), guilty as charged of simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2. Johnston was sentenced to ten years at hard labor and ordered to pay $500 in restitution. He now appeals his conviction, alleging that the evidence presented at trial was insufficient to convict him. For the following reasons, we affirm his conviction and sentence.

## FACTS & PROCEDURAL HISTORY

On August 21, 2015, Jamie Varnell ("Varnell") reported a burglary that took place at her residence on 121 Elmwood Street in West Monroe, Louisiana. Varnell told responding officers that she left home for approximately ten minutes to run a short errand; when she returned, she noticed a small, white, single cab pickup parked on her property. Unsure why the truck was there, Varnell asked her mother, Melanie Carpenter ("Carpenter"), who was on the phone with her at the time, if she had hired anyone to work on the property that morning. After learning that her mother hadn't hired anyone, Varnell exited her vehicle. As she approached the front door, a white male came out of the home.

Varnell asked the man why he was in her home, to which the perpetrator only shrugged, walked toward her, stated that the door was unlocked, and told Varnell to "please get in [her] car and leave." As she continued to question him, the man got physically close enough for Varnell to place her hand on his chest to confront him. She asked her mother to call

the police.  As she did this, Varnell stated that the perpetrator moved his arm back as if to hit her, causing her to run away from him.  As the man walked to the truck, Varnell placed a call to the police, then attempted to take a picture of the truck's license plate.  Varnell stated that before she was able to take the picture, the man got out of the truck, bent the plate, and proceeded to chase her around the yard before he got back into the truck and left.

Varnell reported that two of her daughter's rings, her son's class ring, and $50 dollars were missing from the home.  Ouachita Parish Sheriff's Office Investigator Everett Holloway ("Inv. Holloway") spoke with Varnell about the incident.  He then provided other law enforcement agencies with Varnell's description of the perpetrator as a white male with a heavy Cajun accent who drove a small, white, single cab pickup, similar to a Chevy S-10.  After Lincoln Parish officers reported that their officers had recently arrested a man for burglary who fit the description, Inv. Holloway prepared a six-person photographic lineup[1] and Varnell was called in to view the potential suspects; Varnell identified Johnston as the man she observed leaving her residence.  On June 23, 2016, Johnston was charged by bill of information with simple burglary of an inhabited dwelling.

At trial, Varnell described her encounter with the perpetrator.  Varnell testified that she did not recognize the man who exited her home and had not given him permission to be in her home.  She stated that the man was physically close enough to her that she was able to touch him and see him up close such that she would never forget his face and eyes.  Varnell then

---

[1] Inv. Holloway testified that the lineup procedure was developed through the Sheriff Department's Thinkstream Lineup system which, in sum, uses drivers' license photos to identify suitable matches from a database based on certain demographics and personal characteristics to produce matches for a lineup.

testified that after the encounter, she witnessed the perpetrator get into a small, white pickup truck, which was similar to a Chevy S-10, and drive away. Notably, at the photo lineup, Varnell testified that she immediately recognized Johnston as the man who entered her home on August 21, 2015.

In support of Varnell's testimony, Carpenter testified that she lived next door to Varnell at the time of the incident and was able to see that a small, white pickup truck, similar to a Chevy S-10, was parked at Varnell's home. Carpenter was on the phone with Varnell for the majority of the confrontation and was able to hear Varnell question the man. Although she was unable to see the perpetrator's face because bushes and trees on the property obstructed her view, Carpenter testified that she was able to see that a man had chased Varnell around the yard.

Inv. Holloway further testified that after he spoke with Varnell on the day in question, he reported Varnell's description of the suspect to other law enforcement agencies in the area and received information from Lincoln Parish deputies that during their own investigation of a series of burglaries in their jurisdiction, one of their officers had arrested a white male with a Cajun accent, who drove a small white truck, although it was a 2002 GMC Sonoma[2] rather than a Chevy S-10. Inv. Holloway testified that he was able to develop a photo lineup based on this information and that Varnell identified Johnston as the perpetrator "pretty quickly."

Johnston was found guilty as charged by a unanimous jury verdict. On February 24, 2020, he filed a motion for judgment of acquittal or new

---

[2] We note that the 2002 GMC Sonoma and the Chevy S-10 are visually similar in appearance and make.

trial. The motion was denied after the hearing. On August 20, 2020, Johnston was sentenced to serve ten years at hard labor and ordered to pay $500 in restitution. On September 4, 2020, Johnston filed a motion to reconsider sentence, which was denied by the trial court. This appeal followed.

## DISCUSSION

In Johnston's sole assignment of error, he asserts that there was insufficient evidence presented at trial for the State to prove beyond a reasonable doubt that he, rather than another individual, was guilty of committing the offense in question. In particular, he contends that under *State v. Burns*, 44,937 (La. App. 2 Cir. 2/2/10), 32 So. 3d 267, the State failed to "negate any reasonable probability of misidentification," because Varnell's description was generic and incomplete. Although Varnell stated that she was close enough to the perpetrator that she would never forget his face, Johnston argues that she failed to provide any specific details about the offender's physical features. He notes that at the time of his arrest, he had dark hair, was balding, and had a moustache, all of which Varnell could not recall. Instead, Varnell only described the perpetrator as a "white male, with a strong Cajun accent, who drove a white Chevy S-10."

Johnston contends that because Varnell was placed in a disturbing situation which transpired over a relatively short period of time, she lacked both the time and ability to sufficiently recall any specific information about the perpetrator for her to either positively identify or provide an accurate and detailed identification of Johnston as the suspect. Johnston further argues that a central part of Varnell's description of the perpetrator was that the

4

man drove a white Chevy S-10, whereas he, at the time of arrest, owned a white GMC Sonoma. Johnston asserts that when Varnell claimed to have attempted to take a picture of the truck's license plate, she would have noticed the GMC logo on the tailgate of the truck; instead, she and Carpenter consistently described the vehicle in question as a Chevy S-10.

Johnston argues that Varnell's generic description of the perpetrator, as well as a lack of physical evidence such as DNA or fingerprints within Varnell's home, was insufficient to convict him as the person responsible for the offense. He argues his conviction should be reversed.

In contrast, the State argues that the testimony presented at trial sufficiently established that Johnston was the perpetrator Varnell confronted on August 21, 2015. Specifically, the State argues that Varnell never wavered in identifying Johnston as the perpetrator. The State notes that Varnell directly confronted the perpetrator during daylight hours and even touched him. Further, Varnell, according to Inv. Holloway, was able to quickly identify Johnston as the man she confronted a week after the incident occurred.

Importantly, at trial, Varnell testified that after the incident, she would never be able to forget the perpetrator's face and thereafter, was able to identify Johnston during trial. Finally, the State contends that the inconsistencies in Varnell's and Carpenter's description of the vehicle they observed at the property and the actual vehicle Johnston owned at the time of the offense, are minor and not fatal to the identification of Johnston as the perpetrator. We agree.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51, 698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate

6

court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not cons.*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 152 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/9/07), 956 So. 2d 769. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36, 180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 6/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/03), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Moreover, in a case where a defendant claims he was not the person who committed the offense, the *Jackson* standard requires that the prosecution negate any reasonable probability of misidentification. *State v.*

*Green*, 38, 335 (La. App. 2 Cir. 5/12/04), 873 So. 2d 889, *writ denied*, 04-1795 (La. 11/24/04), 888 So. 2d 227; *State v. Powell,* 27,959 (La. App. 2 Cir. 4/12/96), 677 So. 2d 1008, *writ denied*, 96-1807 (La. 2/21/97), 688 So. 2d 520. Positive identification by one eyewitness or victim may suffice to support a conviction. *State v. Hughes*, 05-0992 (La. 11/29/06), 943 So. 2d 1047, 1051; *State v. Green, supra.* La. R.S. 14:62.2 provides:

> A. Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.

After a review of the record, we conclude that there was sufficient evidence of Johnston's identity as the perpetrator to support his conviction of simple burglary of an inhabited dwelling. The crux of Johnston's argument is that he was misidentified as the perpetrator of this offense, in part, because Varnell's description of the suspect was generic and lacked any specific details which might otherwise identify him as the perpetrator and the stress of the situation prevented her from accurately gathering such information. However, at trial Varnell testified that the incident took place during the daytime and that she was able to observe the perpetrator as he exited her home. Although Johnston dismisses Varnell's ability to accurately recall any details about the perpetrator because of how short the incident was, we note that Varnell was not only able to repeatedly question the man exiting her home as he walked slowly toward her, but that she also physically interacted with him.

Importantly, Varnell testified that during the encounter, the perpetrator got physically close enough to her for her to be able to put her

8

hands on his chest to push him away from her, that the perpetrator threatened and attempted to hit her while she was near him, that he chased her around the yard, and that she watched him get out of his truck, bend the license plate and then leave. Although Carpenter's view of the incident was obstructed by bushes and trees, she was able to see the vehicle parked on the property and that the perpetrator chased Varnell around the yard. It is because of the intensity of the situation that Varnell stated that she would never be able to "forget his eyes and his face."

Although Johnston dismisses Varnell's ability to accurately recall any details about the perpetrator because of how short the incident was, the jury was convinced that Varnell, as she stated at trial, had enough time to accurately see and later identify Johnston as the perpetrator, and we agree. Moreover, Varnell, as corroborated by Inv. Holloway, was able to identify Johnston in the photo lineup "almost immediately" and "without hesitation"[3] almost a week after the incident occurred, and later identify him in open court years after the incident occurred. Finally, in addressing the discrepancies between the vehicle Varnell and Carpenter described and the one Johnston actually owned, we first note that the visual differences between a Chevy S-10 and a GMC Sonoma are minimal.

Although Johnston asserts that when Varnell went to the back of the truck, she would have seen the GMC logo on the tailgate, yet continued to identify the vehicle as a Chevy S-10, we highlight that Varnell's actual testimony regarding the vehicle is not that the vehicle *was* a Chevy S-10, but

---

[3] The record further indicates that Varnell testified that when she first saw Johnston in photo lineup, she "hundred percent thought" the man she identified was the person she encountered on August 21, 2015.

9

that it was *similar* to it. Specifically, Varnell testified that when she first saw the truck, she though it was a "meter reader" vehicle, which she "assumed were all S-10's." Rather than stating that the vehicle she observed on the day in question was in fact a Chevy S-10, Varnell simply compared the vehicle to one which she was familiar with because she was not an expert with vehicles.

In convicting Johnston for the offense, the jury found that Varnell's testimony, as corroborated by both Carpenter and Inv. Holloway, was sufficient evidence to identify Johnston as the perpetrator. Considering the physical encounter Varnell had with Johnston and her ability to identify him a week and then years after the incident occurred, we find no reason to overturn Johnston's conviction and sentence. Therefore, this assignment is without merit.

## CONCLUSION

For the aforementioned reasons, Johnston's conviction and sentence are affirmed.

**AFFIRMED.**