Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,591-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BRAD A. GALLOWAY                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 391,581

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

REBECCA A. EDWARDS
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. On April 25, 2023, defendant, Brad Galloway ("Galloway"), was convicted by a unanimous jury of one count of attempted simple robbery. Following sentencing, Galloway was sentenced to three and one-half years at hard labor. Galloway now appeals his conviction and sentence, alleging that the evidence presented at trial was insufficient to positively identify him as the attempted robber and that his sentence was excessive. For the reasons set forth below, we affirm Galloway's conviction and sentence.

## FACTS

On October 24, 2022, Galloway was charged by bill of information of attempted simple robbery, in violation of La. R.S. 14:27 and 14:65, of Home Federal Bank on September 22, 2022. Trial began on April 25, 2023, wherein the following testimony was elicited:

First, Officer Garrett Hayes ("Officer Hayes"), of the Shreveport Police Department ("SPD"), testified that on September 22, 2022, he was dispatched to Home Federal Bank in response to an attempted robbery. Officer Hayes testified that while en route, he learned that a white male entered the bank and gave the teller a note demanding money, but after the teller refused to comply, the man left in a dark-colored sedan. Officer Hayes stated that when he arrived, he spoke with the manager and two tellers and confirmed that a white male entered the building and put a grocery bag and a note on the teller's counter. Officer Hayes explained that the note demanded that the teller place cash into the bag, without dye packs, and to wait ten minutes before contacting the police.

Officer Hayes stated that during his investigation, he reviewed the bank's surveillance footage and observed a white male, around 5'10", over 200 pounds, wearing a dark-colored shirt, pants, wig, maroon hat, glasses, and a face mask. He stated that after he reported the suspect's description, another officer detained a man, later identified as Galloway, matching the description at the parking lot of the Siegel Suites, a hotel near the bank. On cross-examination, Officer Hayes admitted that the suspect in the video was seen wearing a blonde wig and glasses, but neither item was ever recovered. Officer Hayes then admitted that at no point during the suspect's interaction with the teller did he remove any clothing so that his facial identity was revealed.

Next, Vanessa Gray ("Gray"), the branch manager for Home Federal Bank, testified that she worked for the company for ten years. She stated that, for safety concerns, she was trained to recognize anything out of the ordinary, or anyone who acts suspiciously or enters the bank in sunglasses, hats, masks, or a disguise to conceal their face. After the State introduced and played a copy of the surveillance footage taken from the bank on the date of the incident, Gray testified that on the day of the incident, she left her office when she noticed a man enter the building wearing a wig, hat, and sunglasses. She stated that she immediately asked the man to remove his hat and sunglasses, but he failed to comply. Gray testified that the teller on duty, Hannah Gibson ("Gibson"), then showed her the note the man handed her.

Gray explained that she was upset upon seeing the note and after the man left, she pushed the panic button, called the police, had an employee

2

lock the door,[1] and instructed a teller to take a picture of the vehicle the man left in. Gray testified that shortly after she spoke with officers, she was taken to identify the man she saw enter the bank. Gray then confirmed that the man she identified for officers was the same person who attempted to rob the bank. Gray then identified Galloway in open court as the man she identified to officers. On cross-examination, Gray admitted that the man who entered the bank never removed his hat, sunglasses, or face mask, so she never saw his face; however, she was able to identify him by his body type.

Gibson, who worked as a teller for Home Federal Bank when the incident occurred, reviewed the surveillance footage and testified that on the day of the incident, a man entered the building and handed her a note. She explained that she handed the note to Gray, who then directed the man to remove his hat and mask. Gibson stated that after Gray asked the man to remove those items a few times, he got frustrated and said in a louder voice that they were not doing what he wanted. Gibson stated that at some point after the man left, Gray called the police, the building was locked, and she took pictures of the vehicle the man left in. Gibson then explained that after officers arrived, she showed them the photos she took of the vehicle before she was taken to identify the man.

Gibson stated that the person she saw looked identical to the person who attempted to rob the bank, just without a disguise. Gibson then identified Galloway in open court. On cross-examination, Gibson also

---

[1] Alyssa Shumate ("Shumate"), an employee at Home Federal Bank, testified that she also saw the note the suspect handed Gibson, and believed that the note was more of a threat than a demand. She stated that after the man left, she locked the lobby door and read the license plate number to the vehicle she saw the man leave in.

admitted that the man never removed any clothing items and that she never saw his face.

Next, Detective Donald Belanger, Jr. ("Detective Belanger") of SPD testified that he investigated the attempted robbery at Home Federal Bank. Detective Belanger stated that he spoke with Gray, Gibson, and Shumate about the matter to understand what occurred. Detective Belanger explained that after he reviewed the surveillance footage and the vehicle from the photographs and video was discovered, he learned that another officer located the suspect in the Siegel Suite parking lot, where he then took Gray and Gibson to identify the suspect. Thereafter, Detective Belanger identified Galloway as the suspect identified from the parking lot. Detective Belanger explained that it was common practice to transport witnesses for identification since the offense occurred shortly after the suspect was located. He then testified that both Gray and Gibson positively identified Galloway as the suspect who attempted to rob the bank.

On cross-examination, Detective Belanger admitted that he was aware that neither Gray nor Gibson saw the suspect's face. Detective Belanger stated, however, that there were other distinct features used to identify Galloway, notably, his body type or "large belly." Detective Belanger also admitted that at the time of the identification, Galloway did not have on a wig, hat, sunglasses, or mask.

Corporal John Madjerick ("Cpl. Madjerick"), a crime scene investigator for SPD, then testified that he was dispatched to the Siegel Suites parking lot. He stated that when he arrived, he collected the recovered items and photographed Galloway's vehicle. Cpl. Madjerick then identified that Galloway's vehicle was a black Saab with a sticker placed

4

over the vehicle's logo, and a Texas license plate, just barely affixed to the vehicle so that it was easily removable. Cpl. Madjerick also identified another Texas license plate found in the door pocket of the passenger seat, a red and gray hat, a cloth mask that was wedged between the seat and console, and a pair of black and gray gloves found between the console and the front passenger seat. Cpl. Madjerick then identified the articles of clothing officers discovered, including a gray polo with a yellow bear logo on the front, and a pair of blue jeans, as well as blonde strands of what he believed to be synthetic hair, that were discovered on the floorboard of the vehicle.

Cpl. Madjerick then identified the grocery bag and the note from the bank. He explained that the note was tested for fingerprints, but no prints were able to be developed from it. On cross-examination, Cpl. Madjerick testified that he was unaware if any fingerprints were taken from the screws on the license plate and that he was unaware if a Louisiana license plate was discovered during a search of Galloway's vehicle, but he was informed that the surveillance footage reflected that the vehicle had a Louisiana license plate. He then admitted that the jeans recovered from this investigation were common and that anyone could have worn them, that face masks were common since Covid, and that no wig or sunglasses were found during the search of the vehicle. Cpl. Madjerick further admitted that the strands of hair were never tested to verify that it was synthetic hair.

Finally, Detective Melvin Smith ("Detective Smith") testified that he and Detective Belanger were dispatched to investigate an attempted robbery. Detective Smith testified that when he arrived at the bank, he spoke with Gibson, who identified the suspect as a white male in blue jeans, a polo shirt,

5

a maroon hat, sunglasses, and a black face mask. Detective Smith stated that Gray informed the suspect he would have to remove his hat and sunglasses, but rather than complying, handed Gibson a grocery bag and note that indicated for them to put money in the bag, without dye packs, and wait ten minutes before calling the police.

Detective Smith explained that he also reviewed the surveillance footage and the photos Gibson took and learned that the suspect left in a black Saab. Detective Smith testified that the license plate seen in the photos was a switched tag, typically issued to trucks. Detective Smith then noted several distinctive features on the vehicle as seen from the photos taken from the bank, including tape over the taillights, and an American flag sticker over the vehicle's logo. In looking at a photograph of the black Saab that was discovered at the Siegel Suites parking lot, Detective Smith testified that the license plate was different, and the American flag sticker appeared to have been ripped off the vehicle's logo because a sticky adhesive residue was left behind. Detective Smith testified that aside from those differences, the vehicle, nevertheless, appeared to be the same one identified from the photos taken at the bank. Specifically, Detective Smith stated that it was the same make and model as the vehicle seen at the bank.

Detective Smith then testified that while at the Siegel Suite parking lot, he spoke with Galloway and Jacqueline Tune ("Tune"), the owner of the vehicle and Galloway's girlfriend. Detective Smith stated that Tune consented to a search of the vehicle and the motel room Galloway and Tune stayed in. He explained that after officers searched the room, they discovered a polo shirt and blue jeans. After he reviewed the note found at the bank, Detective Smith testified that the handwriting was illegible and

6

appeared to have been written that way on purpose. Detective Smith then identified Galloway in open court and stated that after the search and witness identification, Galloway was determined to be the person who attempted to rob the bank.

On cross-examination, Detective Smith acknowledged that, as seen on the bank's surveillance footage, the suspect entered the bank wearing a hat, wig, face mask, and sunglasses. He also acknowledged that the suspect did not remove any of those items during the encounter. Detective Smith further acknowledged that both Gray and Gibson identified Galloway as the suspect even though Galloway did not have on any of the items the suspect was seen wearing. Detective Smith then testified that he showed Tune a photo taken from the surveillance footage and she identified Galloway as the suspect.[2] On redirect, Detective Smith clarified that Galloway's arrest was not made strictly on witness identification alone.

At the close of testimony, the jury unanimously found Galloway guilty as charged. On April 27, 2023, Galloway filed a motion for new trial; however, while the trial court signed the order, it did not indicate whether the motion was granted or denied. On May 4, 2023, sentencing was held, wherein the trial court stated in open court that Galloway's motion was denied.[3] The trial court then reviewed Galloway's background, including his personal relationships, education, employment, and criminal history, which included three DWI's, a charge of theft, and criminal simulation. The trial court then stated its considerations of the factors set forth under La. C.

---

[2] We note that no formal objection was made to Detective Smith's response.

[3] Defense counsel indicated that a motion for post-verdict acquittal was also filed and the trial court denied that motion as well. However, a copy of this motion is not in the appellate record.

Cr. P. art. 894.1, and sentenced Galloway to three and one-half years at hard labor with credit for time served. On May 11, 2023, Galloway filed a motion to reconsider sentence, which was subsequently denied. This appeal followed.

## DISCUSSION

**Sufficiency of the Evidence**

By his first assignment of error, Galloway argues there was insufficient evidence presented at trial for the State to prove beyond a reasonable doubt that he was guilty of the offense in question. Galloway acknowledges that while no motion to suppress was filed concerning the lineup procedure and identification, this court should, nevertheless, consider the manner in which the procedure was conducted. Specifically, Galloway highlights that when Gray and Gibson were called to identify the suspect, they were brought to the Siegel Suites parking lot, where they made an identification from across the parking lot and were not shown any other suspects.

Galloway further argues that both witnesses described the suspect as having a large stomach or midsection, and at the time of the robbery, as wearing dark glasses, a red or burgundy hat, a face mask, and a blonde wig; however, he notes that he was not wearing any of the described items at the time the identification was made. He asserts that he was only identified because he was overweight and by no other physical characteristics.

In addition to the eyewitness identification, Galloway further argues that the evidence officers seized also failed to establish that he was the perpetrator. Galloway contends that the blue jeans officers recovered were regular pants with no identifying features; further, the shirt recovered had a

yellow bear logo on it, but neither witness described the shirt the suspect wore as having an emblem on it. Moreover, Galloway argues that the face mask officers found in the vehicle was also a common item anyone could have worn, especially in the wake of COVID-19, and neither the gloves nor strands of blonde hair were ever submitted for "scientific testing." Finally, Galloway argues that the license plate on the vehicle being loose was also not indicative of his identity as the perpetrator. Galloway asserts that a front license plate being missing simply indicated that the plate had yet to be replaced and could have simply been attached poorly. He maintains that his poor mechanical skills do not equate to guilt, and therefore, his conviction should be reversed.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51, 698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence

9

by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not cons.*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 152 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/09/07), 956 So. 2d 769. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 6/27/03), 847 So.

2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/03), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Moreover, in a case where a defendant claims he was not the person who committed the offense, the *Jackson* standard requires that the prosecution negate any reasonable probability of misidentification. *State v. Green*, 38, 335 (La. App. 2 Cir. 5/12/04), 873 So. 2d 889, *writ denied*, 04-1795 (La. 11/24/04), 888 So. 2d 227; *State v. Powell,* 27,959 (La. App. 2 Cir. 4/12/96), 677 So. 2d 1008, *writ denied*, 96-1807 (La. 2/21/97), 688 So. 2d 520. Positive identification by one eyewitness or victim may suffice to support a conviction. *State v. Hughes*, 05-0992 (La. 11/29/06), 943 So. 2d 1047; *State v. Green, supra.*

After viewing the evidence in the light most favorable to the State, we find that the evidence produced at trial was sufficient to convict Galloway of the charged offense. Here, Galloway was charged with one count of attempted simple robbery in violation of La. R.S. 14:27 and 14:65. La. R.S. 14:65 defines simple robbery as either:

> (1) The taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
>
> (2) The taking of anything of value when a person is part of a group of three or more individuals and the person has the intent to take anything of value from a retail establishment that is in the immediate control of a retail employee or employer and there is a reasonable belief that a reasonable person would not intercede because of fear.

11

La. R.S. 14:27(A) further provides:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

We find that the evidence and testimony presented by both witnesses and Detective Smith, clearly establishes that Galloway was the person who attempted to rob Home Federal Bank.

Both Gray and Gibson testified that they interacted with the suspect and were able to see several key identifying features, including, but not limited to body type and clothing which they were able to describe to officers in detail; namely, that the suspect wore a red or burgundy hat, wig, face mask, jeans, and the color of the suspect's shirt. Moreover, both Gray and Gibson identified the suspect shortly after the event occurred and expressed that they were positive in their identification. We further highlight that surveillance footage captured the suspect and Detective Smith testified that Galloway's girlfriend, Tune, also positively identified him as the suspect.

Moreover, detectives in this case testified that the identification alone was not the sole basis for Galloway's arrest. Specifically, the detectives in this case highlighted that the suspect fled the scene in a black Saab with a Louisiana license plate, as identified by both surveillance footage and the photographs employees took of the vehicle. Detectives also noted that the vehicle the suspect fled in also had an American flag sticker that covered the vehicle's rear emblem. They testified that when the vehicle was located, the plate had a loosely hanging Texas plate located on the back of the vehicle

12

only, and not the front as required under Texas law. Moreover, the American flag sticker that had been seen previously was gone, and in its place was a sticky residue. Further, officers discovered strands of yellow hair in the vehicle they believed were synthetic and likely came from a wig. Officers additionally discovered a red or burgundy hat, a face mask, jeans, and a shirt that matched the description provided by both eyewitnesses.

Accordingly, given the totality of the evidence and testimony presented in this case, we find that there was sufficient evidence for any rational trier of fact to find that Galloway was guilty of the offense in question.

**Excessive Sentence**

In his final assignment of error, Galloway argues that the imposition of a three and one-half-year sentence at hard labor, the maximum sentence for this offense, was excessive under the facts and circumstances of this case. Galloway asserts that maximum sentences are reserved for the worst offenders, and he simply does not fall within that category. Specifically, Galloway argues that his criminal history is minimal as it consists of only three previous DWI charges from 20 years prior, two theft counts in 2011, and a misdemeanor charge of criminal simulation in 2020. Galloway notes that the present offense did not involve a weapon, and involved no force, intimidation, or threats. Moreover, Galloway highlights that he is "an educated man in his fifties," and has worked as a consultant in Florida and Alabama.

In this case, the maximum sentence for a conviction of simple robbery is seven years at hard labor, and the maximum sentence for a

conviction of attempted simple robbery is three and one-half years. La. R.S. 14:65; La. R.S. 14:27(D)(3).

The law concerning excessive sentences is well-settled; claims are reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *Id.*

A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156. To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052 (La. 4/15/19), 267 So. 3d 1131.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Griffin, supra*; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another

14

sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. McKeever*, *supra*.

Here, the trial court fully set forth its considerations of the sentencing factors set forth under La. C. Cr. P. art. 894.1 and gave an adequate consideration of Galloway's personal and criminal history. The trial court determined, however, that because Galloway's actions created the possibility that a security guard could have produced a firearm to stop the attempted robbery, those present during the offense stood the chance of being injured. Therefore, a lesser sentence would deprecate the seriousness of his actions. Moreover, Galloway's sentence falls within the statutory range for this offense, and Galloway's sentence is neither grossly out of proportion to the severity of the offenses, nor does it shock the sense of justice.

Accordingly, we find that the trial court did not abuse its discretion in imposing this sentence, and this assignment of error is without merit.

## CONCLUSION

For the aforementioned reasons, Galloway's conviction and sentence is affirmed.

**AFFIRMED.**

15